THE ST. LOUIS, HANNIBAL AND KANSAS CITY RAILWAY COMPANY v. THE HANNIBAL UNION DEPOT COMPANY et al., *Appellants*.

Division One, November 26, 1894.

1. **Railroad**: CHARTER, CONSTRUCTION OF. The power granted to a railroad corporation by its charter to construct a railroad "from the city of H." to another designated place authorizes it to build to or from any place in the city.

The St. L., H. & K. C. R'y Co. v. Hannibal Union Depot Co.

2. **Eminent Domain, Determination of Right to Exercise:** CONSTITUTION. The power to determine when the public interests demand the exercise of the right of eminent domain rests exclusively with the legislature subject to judicial determination "whether the contemplated use be really public." (Const., art. 2, sec. 20.)

3. **Eminent Domain:** RAILROAD PROPERTY AND FRANCHISES: STATUTE. The property and franchises of a railroad corporation are subordinate to the right of eminent domain subject, however, to the statutory qualification that the use by virtue of such eminent domain "shall not materially interfere with the uses to which by law the corporation holding the same is authorized to put its line." (R. S. 1889, sec. 2741.)

4. ——: ——: ——. The fact that the railroad asking the condemnation for a right of way over the land of another corporation might obtain a feasible route over the lands of other proprietors does not exempt defendant's land from such condemnation.

5. ——: ——: DAMAGES: INSTRUCTION. In a proceeding to condemn a strip of land belonging to a corporation operating a union depot and adjoining such depot, in order to provide a railroad right of way, an instruction requiring the consideration as an element of damages of "injury to the real estate and plant directly caused by the presence of plaintiff's railway on said strip and the operation of plaintiff's railroad in transportation thereon" sufficiently includes all injuries to defendant's franchises.

6. ——: ——: ——: MOTION FOR NEW TRIAL. Objection to the amount of damages awarded should have been made in the motion for a new trial.

*Appeal from Hannibal Court of Common Pleas.*—HON. THOMAS H. BACON, Judge.

AFFIRMED.

*George A. Mahan* for appellants.

(1) The purpose and the result of this proceeding is to take away from and deprive appellant of a part of its property and franchise, and to appropriate the same to the exclusive use of respondent. This can not be done, as there is no authority of law for it. *Railroad v. Railroad,* 118 Mo. 615; *Appeal of Railroad,* 122 Pa. St. 511; *Railroad v. Williamson,* 91 N. Y. 552; *Hickok v.*

*Hine*, 23 Ohio St. 423; *Railroad v. Railroad*, 81 Ill. 523; *Union Depot Co. v. St. Paul*, 30 Minn. 359; *Railroad v. Railroad*, 124 Mass. 368;    *Cake v. Railroad*, 87 Pa. St. 307; *Pennsylvania Railroad's Appeal*, 93 Pa. St. 150; *Railroad v. Brownell*, 24 N. Y. 351; *Railroad v. Board*, 57 Fed. Rep. 945; *Railroad v. Railroad*, 110 Mo. 510.    (2) Neither the charter nor the profile map of respondent shows any authority in respondent to condemn the land in question.  The charter only shows that its termini are at Oakwood and Hannibal, but does not locate any point in Hannibal.  Nothing can be determined from the map.    The right of condemnation as applied to railroad crossing cases is universally based upon an express statute, section 2226, Revised Statutes, 1889.    The right to condemn union depot grounds has never been conferred.  The general law, section 2741, Revised Statutes, 1889, does not confer upon respondent that right.    There is no express statutory authority.    *Union Depot Co. v. St. Paul*, 30 Minn. 359; *Railroad v. Railroad*, 118 Mass. 391; *Matter of Buffalo*, 68 N. Y. 167; *Railroad v. North*, 103 Ind. 486; *Matter of Central Park*, 63 Barb. 282; *Railroad v. Dayton*, 23 Ohio St. 510; *Railroad v. Commissioners*, 118 Mass. 561. (3) This amount of land seems to be indispensable now and for the future demands of appellants' business.    Appellant is not necessarily limited to a use of any portion of its depot grounds, without any modification of its present arrangement.    It is entitled to make any changes in the tracks, sheds, buildings or otherwise, which may better facilitate the use of the premises for depot purposes.  *Railroad v. Faribault*, 23 Minn. 169; *Union Depot v. St. Paul*, 30 Minn. 359.    (4) The standing of passenger trains on the main tracks to load and unload passengers, and the passage of main line trains over such tracks are necessarily inconsistent.    Two public uses, the one requiring control by respondent for the

free passage of its main line trains, the other control
by appellant for such occupancy as its business requires.
Such contradictory and impossible uses of the same
land for public purposes will not be permitted.    *Rex
v. Russell*, 6 East, 427; *People v. Cunningham*, 5 Denio,
530; Angell on Highways, sec. 227; *Hannibal v. Rail-
road*, 49 Mo. 481.    It is not material that the land in
question was acquired by purchase instead of by regu-
lar condemnation proceedings. *Yates v. Van de Bogert*,
57 N. Y. 526.    (5) It is necessary for the respondent
to make this allegation in its petition, and show at the
hearing that there will be no material interference in
the taking of property for public use.    Every demand
and requirement of the statute must be strictly followed
and affirmatively shown.    *St. Louis v. Gleason*, 93 Mo.
33; *Railroad v. Town Site Co.*, 103 Mo. 462; *Anderson
v. Pemberton*, 89 Mo. 65.    (6) There is no necessity for
the condemnation of the strip of land in question.
Even if it should be conceded that the terminus of
respondents' road was north of the union depot
grounds, all the evidence shows that respondent could
have condemned around the union depot grounds,
there was no necessity for crossing the same, and that
under the facts in this case, respondent could not
legally condemn the strip of ground and the court
erred in permitting it.    *Railroad v. Railroad*, 39 Am.
and Eng. R. R. Cases, 6, and note at page 15; *Appeal of
Railroad*, 122 Pa. St. 511.    (7) A careful reading
of the instructions of the court to the commissioners,
on the measure of damages, will show that the court
confined the commissioners, in assessing damages, to
the tract east of Bear creek, and to increased exposure
of buildings on other tract to loss or damage by fire,
and thus prevented the commissioners from assessing
damages to the entire lot or tract.    There was but one
cut-lot 41.    Under repeated decisions of this court this

is error. *Railroad v. Story*, 96 Mo. 611; *Railroad v. Calkins*, 90 Mo. 538; *Railroad v. Waldo*, 70 Mo. 629; *Railroad v. Ridge*, 57 Mo. 599; *Railroad v. Fowler*, 113 Mo. 459. (8) The court further erred in instructing the commissioners on the measure of damages, by failing to tell the commissioners to base the damages upon the market "value of the land to be appropriated, which is to be assessed with reference to what it is worth for sale, in view of the uses to which it may be put." *Railroad v. Porter*, 112 Mo. 368; *Railroad v. McGrew*, 104 Mo. 282; *Boone Co v. Patterson*, 98 U. S. 408; note to *Railroad v. Waldron*, 88 Am. Dec. 113.

*James P. Wood* for respondent.

(1) The taking of the property of one corporation and subjecting it to a public use by another corporation is, by the terms of section 2741, Revised Statutes, 1889, "limited to such use as shall not materially interfere with the use of which, by law, the corporation holding the same is authorized to put said lines." *Railroad v. Railroad*, 35 Mich. 263; *Railroad v. Railroad*, 111 Mass. 125; *Toll Bridge v. Railroad*, 17 Conn. 454. (2) A finding of no "material interference" is implied from the course of the proceeding itself. *Hannibal v. Railroad*, 49 Mo. 480. (3) The rights of respondent in building its road and the acquisition of its right of way over appellant's land is by no means exclusive. Respondent accepted its charter and franchises, and builds, owns and uses its tracks, subject at all times to the power of the state to authorize the construction of other railroads across its tracks whenever the public welfare may demand it. *Railroad v. Railroad*, 118 Mo. 613. (4) Where condemnation of property is governed by general laws, no special legislative enactment is necessary to authorize the taking

by one corporation the property of another, not used or absolutely necessary to the enjoyment of the franchise of such prior holder. Mills on Em. Dom., sec. 47, and cases cited. (5) The evidence conclusively shows that the land in question is not used, and that it is not actually necessary for such depot purposes. (6) The petition is sufficient. (7) The instructions of the court to the commissioners, on the measure of damages, did not confine them to the tract south of Bear creek. Under the instructions the commissioners were directed to assess "the damage, if any, to that portion of the lot not sought to be appropriated," and the tract north of Bear creek as well as the tract south of Bear creek was included in said instructions. No damage was allowed to appellant for the tract north of Bear creek. And it would be difficult to determine how any damage could result to the tract north of Bear creek. Appellants did not file any exceptions to the report, based on a failure to assess damage to the tract north of Bear creek; not having pointed this matter out by specific objections either by exception or in the motion for a new trial, it can not be raised for the first time in the appellate court. *Hornblower v. Crandall*, 78 Mo. 581; R. S. 1889, sec. 2085.

MACFARLANE, J.—The proceedings were to condemn for a railway track of defendant's railroad a part of the land acquired and held by the defendant for union depot purposes in the city of Hannibal.

It appears from the evidence that the defendant was incorporated under the general laws of the state, (R. S. 1879, sec. 826; R. S. 1889, sec. 2667) for the purpose of constructing, establishing and maintaining a union station for passengers in the city of Hannibal; that for the purposes of its incorporation it acquired a tract of land in the eastern portion of the city. The

greater portion of this land lay on the north side of. Bear creek, a stream flowing easterly, and from fifty to seventy feet in width. A portion of the land was described as out lot 41, which was acquired by purchase. This lot was triangular in shape, the north side being substantially coincident with the north bank of the creek. The other two sides crossed the creek and came near uniting at Monroe street about one hundred feet south of the creek. The point of the triangle was cut off by Monroe street thus making the south part of the lot front sixty-three feet on Monroe street. This lot then covered a small portion of land north of Bear creek, the whole width of that stream and that south of it as above described. The bulk of defendant's station grounds lay north of the creek, the track of the M. K. & T. R'y Co. lying between these grounds and the creek.

On the grounds north of the creek the defendant had constructed and maintained a large, convenient and expensive depot building with extensive sheds, with a number of railroad tracks running into them, from the northeast, also one or more tracks on the north side of the building. The cost of the entire property was estimated at $160,000. No part of the improvements were on the land south of the creek.

It was shown that Hannibal was a city of about fifteen thousand inhabitants; that six or seven railroads centered there, all of which used this depot for receiving and unloading passengers, and that from forty-eight to fifty passenger trains come into the depot daily.

The evidence of the defendant was to the effect that Bear creek was a small stream generally dry, and could easily be bridged and the ground south of it easily utilized for building tracks into the depot; that this land was intended for depot purposes when the neces-

sities of business required that it should be so applied; that every available space of the ground north of the creek was already occupied and the company was crowded for room, and that the passenger traffic was constantly increasing.

Plaintiff is a railroad corporation authorized under the general laws of the state with power to construct and operate a road from Perry, in Ralls county, to the city of Hannibal, a distance of about thirty-two miles. By this proceeding plaintiff sought to appropriate a strip of land fifty feet wide and ninety-four feet long through the south end of the depot land lying south of the creek. This would leave an irregular piece of the land south of the road of the dimensions of twenty feet on the west, sixty-two feet on the south, seventy-six feet on the east, and ninety-four feet on the north side. Defendant filed written objections to the proceedings, the grounds of which in substance were afterwards renewed in exceptions filed to the report of the commissioners. The evidence was heard by the court before the appointment of commissioners. The court found, and so declared in its judgment, that "plaintiff has the power to condemn over defendant's unused and unapplied vacant land south of Bear creek a right of way for through main track passage and travel."

Commissioners were thereupon appointed. The court in substance instructed the commissioners that in estimating the damages, in addition to the value of the land appropriated they should estimate "the depreciation, if any, in the reasonable market value of the defendant's remaining real estate and plant, caused by the taking of said right of way strip from said property, and by injurious affection of defendant's said property and plant, directly caused by the presence of plaintiff's railway on said strip and the operation of plaintiff's

railroad in transportation thereon, and the sum of said reasonable, actual market value of said strip so taken, and all said damages, if any, will be the measure of defendant's damages."

The jury afterwards reported: "We hereby assess the damage, sustained for said strip and said corner cut off, at the sum of four hundred dollars, and for damages, as sustained to that part of said depot tract lying between said strip and Bear creek, we assess at the sum of $200, as will more fully appear by the map or plat hereto annexed marked 'Exhibit A,' and that the damages assessed by us in full is the sum of $600."

Defendants filed exceptions to the report of the commissioners on the grounds: That, under the petition and evidence, plaintiff had no legal right to appropriate the land of defendant for the purposes named; that no necessity for the appropriation was shown; and that the commissioners were improperly instructed. The exceptions were overruled and judgment of condemnation was entered in favor of plaintiffs, and for the amount of damages awarded in favor of defendants. Defendants appealed.

It may be stated further that the evidence offered by plaintiff tended to prove that defendant's property and business would not be materially affected by the appropriation sought.

I. It is insisted in the first place that the power to construct a railroad from the city of Hannibal to another designated point in the state does not sufficiently designate the terminal point in said city and consequently no power existed, under the charter of plaintiff, to extend its road through a part of the city to the *union depot*. The charter contains no restrictions, express or implied, as to the point or terminus in the city of Hannibal. To or from a city, without other restrictions, we think fairly means to or from any point

within such city.   So far as the state is concerned the grant to plaintiff confers power to locate one of the termini of its road at any point in the city of Hannibal. *Railroad v. Railroad*, 112 Ill. 599.

II.   It is insisted, and this is the substantial question in the case, that, inasmuch as defendant's property has been devoted to one public use, it can not lawfully be taken and applied to another inconsistent public use, under the right of eminent domain, though a general power is given plaintiff by charter to condemn land for its railroad.

The power of the state to appropriate private property to a public use is an inherent element of sovereignty.   It applies to all property and is impliedly reserved in every grant.   The property and franchises of a corporation are subject to it.   The power to determine when the public interest demands its exercise rests exclusively with the legislature, subject to judicial determination "whether the contemplated use be really public." Sec. 20, art. 2, const. of Mo.   "The necessity may be left the adjudication of designated officers or tribunals; but when not so delegated, it may be declared by the legislature itself.   The right itself may be delegated to corporate bodies, public or private; and when the enjoyment of two public rights would to some extent interfere, it is * * * for the legislature to determine which shall yield, and to what extent, and whether wholly or in part only, to the other; and such question will ordinarily be determined by the legislature according to their conviction of the greater preponderance of public necessity and convenience."   *Railroad v. Railroad*, 111 Mass. 131, and cases cited.

It may be conceded, as a general rule of law, that lands once appropriated to one public use can not be taken under proceedings *in invitum* and applied to the same or an inconsistent use unless the intention of the

legislature that it should be so taken is manifested in express terms, or by necessary implication. *Railroad v. Williamson*, 91 N. Y. 552; Lewis on Eminent Domain, sec. 276, and cases cited by appellant. It may be conceded also that the statute of this state has not conferred upon plaintiff in express terms the power here invoked. Does it exist by necessary implication? "Whether the power exists in any given case is a question of legislative intent, to be ascertained in the first place from the terms of the statute, and in the second place by the application of the statute to the subject-matter." Lewis on Eminent Domain, sec. 276, and cases cited.

The constitution declares that "the exercise of the power and right of eminent domain shall never be so construed or abridged as to prevent the taking, by the general assembly, of the property and franchises of incorporated companies already organized, or that may be hereafter organized, and subjecting them to the public use, the same as that of individuals." Art. 12, sec. 4, const. of Mo. These terms are broad enough to include property of private corporations which is devoted to public use. So, as the power stands unrestricted and unlimited, there can be no difference between corporate and individual rights, and a grant for one public purpose may be made to yield to another deemed by the legislature of equal or greater importance. All legislation must be construed in the light of this constitutional provision. While the power to exercise the right of eminent domain delegated to railroad corporations, is general in its terms, and is not expressly given to appropriate corporate property devoted to another use, the general power includes the appropriation of any lands and other property and necessarily includes that of corporations. This is more apparent in view of the provision of the statute which

limits the right to appropriate the land of a corporation "to such use as shall not materially interfere with the uses to which, by law, the corporation holding the same is authorized to put said lines." R. S. 1889, sec. 2741. The power to appropriate a part of defendant's land for plaintiff's railroad is necessarily implied from the powers conferred generally, unless to do so will materially interfere with the uses of the union depot, for which it was acquired and is held.

To determine this question the court heard the evidence, the substance of which is given in the statement. The court found that there would be no such interference and in its conclusions we fully agree. In doing so we recognize the importance to defendant and the traveling public, which it serves, of having the property actually used in connection with its station free from the use or even limited control of others. We also recognize the right of defendant to make provision for the probable necessities of the future and make its plans with reference to such needs. But we are convinced that there is no reasonable probability that the small piece of land south of the creek, cut off as it is by that stream and the right of way and tracks of another railroad, from all the land now improved and used, will ever be, or can safely be, used by tracks or buildings in connection with the depot. The land plaintiff seeks to acquire is at least 150 feet from any of defendant's improvements, nor is any of its business conducted on or across that part of its ground. We are unable to see that the uses for which the land was acquired will be materially interfered with by the construction and operation of plaintiff's road across the same as contemplated.

III. But it is said that there is no such necessity for the appropriation of a part of defendant's property as justifies the exercise of the power of eminent domain.

The use of land for railroad tracks has ever been regarded as a public use. Counsel does not question this proposition, but insists that defendants' property ought to be exempt if plaintiff has other routes over the lands of other proprietors which could be used in reaching the terminus of the road. In other words that defendant's property, being already devoted to one public use, can not be taken unless the necessity is so absolute that without it the grant itself will be defeated. That the necessity must be beyond plaintiff's control, and not one created by itself for its own convenience, or for the sake of economy.

It is undoubtedly true that "the right of eminent domain rests upon necessity and that alone. Beyond this there is no right." *Railroad Co.'s Appeal*, 93 Pa. St. 150. But it is also true that the sovereignty must be the judge of the necessity of taking the property, and the legislature has delegated to railroad corporations the right to exercise the power, and the courts of this state have always held the use of land by a railroad to be for a public use. The sovereignty has lodged with railroad companies the power of selecting and adopting their own routes subject only to such limitations as have been imposed. Whenever the use of private property, on the line adopted, is necessary, the necessity exists. There is no distinction in this respect between private and corporate property, except when the exercise of the power as to the latter should "materially interfere with the uses, to which, by law, the corporation holding the same is authorized," to apply it. Section 2741, *supra*. As we have seen, taking the land sought in this proceeding would not materially interfere with defendants use of its union station, and, as plaintiff has adopted that route for its road, we must hold that the necessity for the exercise of the power exists.

IV.  We do not think serious criticism can be made of the instruction given by the court to the commissioners on the measure of damages.  It is true defendant was entitled to compensation for injury to its franchises. But "a franchise is an intangible thing.  It can neither be seen nor handled.   When, therefore, we speak of taking a franchise under the right of eminent domain, we mean the taking of the property of a corporation. The invisible, intangible thing is never taken, except as the exercise of its right may be affected by the taking of its property." *Railroad Co.'s Appeal, supra, loc. cit.* 162.   The commissioners were required to consider as an element of damages injury to the real estate and plant caused by taking said right of way strip from said property, and by any injurious affection of defendant's said property and plant directly caused by the presence of plaintiff's railway on said strip and the operation of plaintiff's railroad in transportation thereon.   This, it seems to me, fairly covers all damages to franchises. The finding of the commissioners of damages only to the land lying south of the creek is not necessarily inconsistent with the instruction.   The commissioners could very well have found that the road and its operation would not interfere in the least with the use of the union station and its property north of the creek or injuriously affect it.   Moreover we do not find that complaint was made in the motion for a new trial as to the amount of damages awarded.

We find no prejudicial error in the record, and affirm the judgment.   All concur.