STATE of Missouri, ex rel. MISSOURI
CITIES WATER COMPANY,
Relator,

v.

Hon. Edward D. HODGE, Judge of
the 12th Judicial Circuit, Audrain
County, Missouri, Respondent.

No. 76344.

Supreme Court of Missouri,
En Banc.

June 21, 1994.

Byron E. Francis, Timothy J. Tryniecki, Ann E. Buckley, St. Louis, for relator.

Louis J. Leonatti, Randall P. Baker, Mexico, for respondent.

PRICE, Judge.

The City of Mexico initiated this proceeding seeking to condemn a waterworks system owned and operated by Missouri Cities Water Company ("Missouri Cities"). Missouri

Cities seeks a writ of prohibition on the ground that the Circuit Court of Audrain County lacks jurisdiction to hear the condemnation proceeding because Mexico is without authority to take private property that is already devoted to a public use and use the property in the same manner. We hold that the City of Mexico does not have authority to condemn the property in question. Consequently, the circuit court is without jurisdiction to hear this matter. The preliminary writ of prohibition is made absolute.

## I.

Missouri Cities is a privately owned corporation which in turn owns a waterworks system in the City of Mexico, and surrounding Audrain County, Missouri. It serves Mexico and the county under a certificate of convenience and necessity from the Missouri Public Service Commission. The waterworks system consists of a treatment plant, wells, pumps, and a distribution system. Through the exercise of eminent domain, the third class city of Mexico seeks to acquire Missouri Cities' waterworks system and to operate the waterworks itself.

Apparently, this controversy arises from the City of Mexico's displeasure over a 61% increase in rates for water service to Missouri Cities' Mexico customers from 1984 to 1991. According to the statements of counsel during oral arguments, Mexico appeared before the Public Service Commission to challenge the rate increases but did not appeal the Commission's adverse decision.

In 1992 the City of Mexico performed an analysis of Missouri Cities waterworks operation and determined that a municipally owned and operated waterworks could save money for its residents. Mexico made an offer of $3,952,903 to purchase Missouri Cities' Mexico operation. This offer was rejected. Mexico made a second offer of $5,200,000, which was also rejected.

On December 2, 1992, the Mexico City Council approved an ordinance declaring the acquisition of Missouri Cities' Mexico Division by condemnation to be a public necessity. The City of Mexico filed its petition on December 7, 1992, seeking to condemn all of Missouri Cities' interest in the real and personal property, fixtures, equipment, and easements used in operating the waterworks system.

■ After conducting a hearing on the matter, the Circuit Court of Audrain County entered an order of condemnation on April 14, 1993, but stayed enforcement to allow Missouri Cities to file its petition for writ of prohibition. This is the proper procedure by which to challenge a proposed order of condemnation. Pursuant to article V, sections 4 and 10 of the Missouri Constitution, we have jurisdiction to decide this cause the same as an original proceeding.

## II.

The power of eminent domain, or condemnation, has long been recognized in Missouri. In *St. Louis, H. & K.C. Ry. Co. v. Hannibal Union Depot Co.,* 125 Mo. 82, 28 S.W. 483, 485 (1894), it was recited that:

The power of the state to appropriate private property to a public use is an inherent element of sovereignty.

The Missouri Constitution recognizes this right by implication when it states:

That private property shall not be taken or damaged for public use without just compensation.

Mo. Const. art. I, § 26.

It is generally accepted that the power of condemnation is limited to takings for the "public use", although there appears to be no general agreement upon the precise definition of that term. 26 Am.Jur.2d *Eminent Domain* § 25 at 669. In *Kohl v. United States,* 91 U.S. 367, 373, 23 L.Ed. 449 (1875), it was stated:

The proper view of the right of eminent domain seems to be, that it is a right belonging to a sovereignty to take private property for its own public uses, and not for those of another. Beyond that, there exists no necessity which alone is the foundation of the right.

■ In Missouri, the right of eminent domain rests with the state and does not naturally inhere in counties, municipalities or public service corporations. The right to condemn can be exercised only upon delegation from the state. *State ex rel. Schwab v.*

*Riley,* 417 S.W.2d 1, 3 (Mo. banc 1967). Statutes delegating this right are strictly construed. As noted in *Southwestern Bell Telephone Co. v. Newingham,* 386 S.W.2d 663, 665 (Mo.App.1965):

> [T]he exercise of eminent domain is in derogation of the right of the citizen; that a statute delegating that power must be strictly construed, and the person or body claiming the right to exercise such delegated power must be able to point to the statute which either expressly or by necessary implication confers that right.

(Footnote omitted.)

### III.

The City of Mexico primarily bases its claim to the power of condemnation over the Missouri Cities waterworks facilities upon § 91.450, RSMo 1986, which states in relevant part:

> Any city of the third or fourth class ... shall have the power to erect or to acquire, by purchase or otherwise, maintain and operate, waterworks ...

Mexico concedes that § 91.450 does not expressly confer upon it the power "to condemn" or "to acquire by the exercise of eminent domain", but argues instead that this power is necessarily implied by the words "or otherwise". In support of this argument, Mexico cites *State ex rel. Schwab v. Riley.*

In *Riley,* the court held that the words "or otherwise" when used in § 71.680, RSMo 1959, contained the power of condemnation by necessary implication. That statute provided that cities could:

> ... acquire by purchase, construction, lease, gift or otherwise, within or without the corporate limits, ... sewage disposal plants.

The Court reasoned that because the statute listed almost every other conceivable method of acquiring title, the words "or otherwise" must have been intended to grant the power of condemnation to cities.

Missouri Cities counters by arguing that unlike § 71.680, § 91.450 does not exhaust all methods of acquiring property short of condemnation. Specifically, § 91.450 does not contain the terms "lease" or "gift". Thus, it argues that the power of condemnation is not *necessarily* implied and that the term "or otherwise" might merely imply the omitted terms.

While the arguments of both parties are reasonable, neither hits the mark. *Riley* dealt with a situation where a city was attempting to condemn private property for a public use, the creation of a sewage lagoon. This rather ordinary exercise of the power of eminent domain simply did not demand an overly "strained or narrow interpretation". Were the issue now before us one involving property held for a private use, *Riley* might well be persuasive, but it is not. Here we are called upon to address a different and a much more difficult question. May a waterworks system already dedicated to a public use be condemned by a municipality for the very same use?

### IV.

The difficulty with the exercise of eminent domain over property already committed to a public use is apparent. If the condemnation is for a different use, what of the necessity of the original public use? If the condemnation is for the same use, why is it necessary at all?

A significant body of Missouri law has addressed the issue of when condemnation of public property may occur for a new and different public use. In *State ex rel. State Highway Commission v. Hoester,* 362 S.W.2d 519, 522 (Mo. banc 1962), the Court quoted with approval 29 C.J.S. *Eminent Domain* § 74 at 861–62, stating:

> As a general rule, property already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication, mere general authority to exercise the power of eminent domain being in each case insufficient; ...

In *Kansas City v. Ashley,* 406 S.W.2d 584, 590 (Mo.1966), Kansas City was not allowed to take railroad tracks from a railroad com-

pany to build a road longitudinally along the tracks because "its charter provides only for a general right of condemnation, and it does not provide specifically for taking the easement of a railroad company." Subsequently, in *Cole County v. Board of Trustees, Etc.*, 545 S.W.2d 422, 425 (Mo.App.1976), Cole County was not allowed to condemn property owned by the Jefferson City Free Library District because the property was already devoted to a public use. The court noted that the county had conceded that general authority to exercise the power of eminent domain was insufficient to take property already devoted to a public use and that concession was "of course forced by the square holding to that effect in *State ex rel. State Highway Commission v. Hoester*, 362 S.W.2d 519, 522 (Mo. banc 1962). See also to the same effect *Kansas City v. Ashley*, 406 S.W.2d 584 (Mo.1966)."

On the other hand, condemnation was allowed under a general grant of authority in *State ex rel. Maryland Heights v. Campbell*, 736 S.W.2d 383, 386–87 (Mo. banc 1987), where the County of St. Louis sought to take a piece of land owned by the Maryland Heights Fire Protection District to widen a roadway because it was found that the taking would not materially impair the fire district's existing use. Similarly, in *St. Louis, H. & K.C. Ry. Co. v. Hannibal Union Depot Co.*, 125 Mo. 82, 28 S.W. 483, 485 (1894), a railroad company was allowed to condemn a small piece of ground from the owners of a train depot because it did not appear that the land would ever be needed in the operation of the depot.

The consistent thread of law running through these cases is that if an existing public use will not be harmed by a new and different public use, condemnation will be allowed under a general form of authority, both uses being "necessary" and not necessarily inconsistent or destructive. However, before allowing a municipality or a public service entity to take other public property that would destroy the previous "necessary" use, specific legislative delegation is required. The rationale being that the legislature, not the subsequent condemning authority, is the proper entity to decide between mutually conflicting or destructive uses of public property.

Mexico has attempted to argue that because its proposed use of the waterworks is not inconsistent with the existing public use of the property and will continue and not destroy that use, the above line of cases would allow its attempt to condemn the waterworks under mere general authority. As is apparent, however, this line of cases is directed at situations where there is a new use that might require a choice between two necessary public uses. These cases do not directly apply to a situation where a prior public use is being condemned so that a new owner may continue the same use.

Only a passing reference to this issue exists in Missouri case law. In *St. Louis, H. & K.C. Ry. Co. v. Hannibal Union Depot Co.*, 125 Mo. 82, 28 S.W. 483, 485 (1894), it was said:

> It may be conceded, as a general rule of law, that lands once appropriated to one public use cannot be taken under proceedings in invitum and applied *to the same* or an inconsistent use, unless the intention of the legislature that it should be so taken is manifested in express terms or by necessary implication.

(Emphasis added.)

Fortunately, the case law of a number of other jurisdictions has addressed this issue in detail and provides significant guidance, especially in the context of the condemnation of entire public utilities.

## V.

A few cases have held that property already devoted to a public use cannot be condemned for that same use. In *Cary Library v. Bliss*, 151 Mass. 364, 25 N.E. 92 (1890), the Massachusetts Supreme Court prohibited the taking of a free public library by a corporation set up by the City of Lexington, Massachusetts "to be held and applied in the same manner as if held by said [library] trustees". After having noted that "property can be taken in this way only in the exercise of the paramount right of the government founded on a public necessity", the court went on to hold that:

> We are of the opinion that the proceeding authorized by the statute was, in its na-

ture, merely the transfer of property from one party to another, and not an appropriation of property to public use, nor a taking which was, or which could be found by the legislature to be a matter of public necessity.

Id. at 96.

This same idea was stated in *State ex rel. Harbor Boom Co. v. Superior Court, Pacific County,* 65 Wash. 129, 117 P. 755, 756 (1911):

And even property actually devoted to public use is still subject to the power of eminent domain, except that 'it cannot be taken to be used for the same purpose in the same manner,' as that would amount simply to a taking of property from one and giving it to another without any benefit or advantage whatever to the public ...

It has been suggested that these cases are limited to public service corporations and do not apply to municipalities. *Vermont Hydro-Electric Corporation v. Dunn,* 95 Vt. 144, 112 A. 223, 227 (1921); 1 P. Nichols, *Nichols on Eminent Domain,* 3d Ed., # 2.2[9], at 2–102. They certainly have not been followed by the more recent decisions, despite their common sense appeal. As will become apparent, we need not, however, address this underlying issue.

## VI.

The majority of decisions have allowed the condemnation of public utilities by municipalities, even though they had already been devoted to a public use. These cases implicitly or explicitly recognize a shift in the analysis of the necessity requirement for condemnation.[1] The focus changes from the actual use of the property, as normally is the case in either the condemnation of private property or condemnation of public property for an inconsistent use, to the additional benefits of public ownership of property already committed to the same public use.

In *In re City of Brooklyn,* 143 N.Y. 596, 38 N.E. 983, 989 (1894), the court justified condemnation of a public waterworks in the following way:

While the purpose of the waterworks company was public in its nature, it cannot be said to be strictly identical with the municipal purpose. A municipal corporation is a public and governmental agency. It holds property for the general benefit, with a larger scope of use.

On appeal, the United States Supreme Court noted:

It matters not to whom the water supply system belongs, individual or corporation, or what franchises are connected with it; all may be taken for public uses upon payment of just compensation.

*Long Island Water-Supply Co. v. Brooklyn,* 166 U.S. 685, 689, 17 S.Ct. 718, 720, 41 L.Ed. 1165 (1897).

The Supreme Court of Washington similarly stated:

A municipal corporation may be given the right by the legislature to condemn and take property of a privately owned utility corporation already devoted to the same public use, for the reason that the use of the public utility by a municipal corporation is larger in scope and of more general benefit to the public.

*State ex rel. Washington Power Co. v. Superior Court,* 8 Wash.2d 122, 111 P.2d 577, 582 (1941).

Another justification set forth for the public taking of private property already devoted to a public use is the temporal reality that the property may be withdrawn from public use by its owners. Thus a public ownership grants a broader and more permanent protection to the public. *Vermont Hydro-Electric Corporation v. Dunn,* 95 Vt. 144, 112 A. 223, 226 (1921); *Forestvale Cemetery Ass'n v. Helena Cemetery Ass'n,* 62 Mont. 52, 203 P. 359, 360 (1921).

With the exception of two decisions that will be discussed later, all of the cases holding that a municipality can condemn a public utility for its same use have required specific and express authorization from the legislature. This is to assure that there is a recognized need for the condemnation of property

1. Interestingly, Black's Law Dictionary 1181 (4th rev. ed. 1968) includes in its definition of the term "necessary" the following distinction:

In eminent domain proceedings, it means land reasonably requisite and proper for accomplishment of end in view, not absolute necessity of particular locations. *State v. Whitcomb,* 94 Mont. 415, 22 P.2d 823.

already devoted to the public use and not merely "the taking of property from one and destroying his right to operate although expressly authorized to do so, and giving it to another without any benefit to the public". *City of Pryor Creek v. Public Service Co. of Okla.*, 536 P.2d 343, 346 (Okla.1975); *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 P. 670 (1903). Hopefully, it might also avoid an endless chain of one public entity after another condemning out the prior owner of the same property.

Perhaps the most illustrative cases of the type of statutory specificity required for this purpose are *C.P. National Corp. v. Public Service Commission*, 638 P.2d 519 (Utah 1981), and *North Salt Lake v. St. Joseph Water Co.*, 118 Utah 600, 223 P.2d 577 (1950). These cases are from the same state and discuss statutes that both were and were not sufficient to justify condemnation of public utilities. In *North Salt Lake*, the court allowed a municipality to condemn a public water utility where the operative statute contained express authorization to "bring condemnation proceedings to acquire" a "waterworks system". In *C.P. National Corp.*, a number of communities sought to condemn a public electrical utility. There, condemnation was found not to be allowed under statutes that provided the municipalities only the power to "construct, maintain and operate waterworks", even in combination with another statute that generally provided "the right to condemn" for "all other public uses for the benefit of any county, city, or incorporated town, or the inhabitants thereof". The court in *C.P. National Corp.* justified its decision upon the lack of "express statutory authority" in the statute before it as contrasted by the statute construed in *North Salt Lake*. These two decisions, when read together, require the express use of the terms "the right to condemn" or "the right to acquire by eminent domain", or similarly specific words, in a statute with the property already subject to public use, as here, "waterworks".

Most other cases appear to require this same degree of specificity. In *City of Pryor Creek v. Public Service Company of Oklahoma*, 536 P.2d 343 (Okla.1975), the Supreme Court of Oklahoma refused to allow a city to condemn an electric utility under a statute that provided "cities and towns may take private property for public use for any necessary purpose". In *Vermont Hydro–Electric Corporation v. Dunn*, 95 Vt. 144, 112 A. 223 (1921), the Supreme Court of Vermont held that a statute providing a city the power to "purchase and take, within or without its corporate limits, lands, springs, streams and water rights of individuals and corporations, and divert waters from natural channels into its water supply" was not sufficient to take the water supply of an electric utility. Alternatively, condemnation was allowed in *Illinois Cities Water Company v. City of Mt. Vernon*, 11 Ill.2d 547, 144 N.E.2d 729 (1957), under a statute that granted municipalities "the right of eminent domain" to take "any waterworks"; in *City of Mesa v. Salt River Project Agr. Imp. & P. Dist.*, 92 Ariz. 91, 373 P.2d 722 (1962), under a statute that provided the "right of eminent domain" for the purpose of taking "a utility or part thereof"; in *Suburban Natural Gas Co. v. Waterworks District No. 3 of Rapides Parish*, 223 So.2d 417 (La.App.1969), under a statute that allowed a waterworks district to "expropriate . . . any existing waterworks system in the district"; in *State v. Superior Court for Grant County*, 8 Wash.2d 122, 111 P.2d 577 (1941), under a statute that allowed a public utility district to "condemn . . . any such public utility"; and in *Duck River Electric v. City of Manchester*, 529 S.W.2d 202 (Tenn. 1975), under a statute stating "any municipality shall have power . . . to . . . acquire by . . . exercise of the right of eminent domain . . . any public works".

## VII.

Only two cases have been found allowing the condemnation of public utilities under a more general statute. In *City of Shakopee v. Minnesota Valley Electric Cooperative*, 303 N.W.2d 58 (Minn.1981), the Minnesota Supreme Court allowed a municipality to condemn all of the customer contracts and other property of an electrical cooperative. Acknowledging that the operative statute pro-

vided only general powers of condemnation, the court concluded that it was nonetheless sufficient because the intended use of the city was consistent with the existing public use.

We are not persuaded by this case for two reasons. First, the authority cited is 1 P. Nichols, *Nichols on Eminent Domain*, § 2.2[9] (1979); *Duck River Electric v. City of Manchester*, 529 S.W.2d 202 (Tenn.1975); and 11 E. McQuillin, *Municipal Corporations*, § 32.67 (3rd ed. 1977). The first two authorities, however, considered statutes with *specific* authority, not general. McQuillin deals with the issue of inconsistent uses. *Shakopee*, 303 N.W.2d at 60–61, simply appears to confuse the rationale applied in inconsistent use cases, where the true concern is whether a weighing of competing public uses is required, with the rationale of determining if a shift in ownership of an already existing public use, for the same purpose, is deemed necessary by the legislature.

In *City of Palm Bay v. General Development Utilities, Inc.*, 201 So.2d 912, 916 (Fla. App.1967), a Florida district court of appeal allowed the condemnation of a water and sewer system pursuant to a general statute, "Any municipality ... may exercise the power of eminent domain over ... any other public or private lands or property whatsoever necessary to accomplish the purposes of this chapter." After citing the general rule that the condemnation of privately held property by a public entity is a "larger public use and more general public benefit resulting from the operation of a public utility by a municipality or public corporation", the court reasoned that the:

> ... public will should not be thwarted by the defendant merely because it got there first, or because it thinks that it possesses some preference whereby a special law or delegation must be enacted according to its will, while for all other people and classes of property a general delegation of power is sufficient.

To the extent that this decision merely focuses on the need of the public use, rather than the need in the shift in ownership we find that it is lacking in persuasive value. It is also interesting to note that the case was decided upon a motion to dismiss. The decision further states that upon remand the city will not be allowed to exercise its power to condemn "unless and until the necessity for the taking is established". *Id.* at 916. Thus, the case may merely stand for the proposition that the power to determine necessity, normally reserved for the legislature, may be assumed by the courts.

## VIII.

■■■ A municipality's condemnation of an entire public utility, already operating under a certificate of convenience and necessity, for the same use,[2] is an extraordinary exercise of the power of eminent domain. We hold that it may only be exercised, if at all (see, *supra* point V.), upon the express and specific authorization of the legislature. For this purpose the words "condemnation" or "power of eminent domain", or their equivalents, must be used in connection with the public use property sought to be acquired, such as "waterworks", "electrical utilities", etc. We understand this to be the majority rule (see, *supra* point VI.). While the words "or otherwise" were sufficient in the *Riley* situation to acquire private property not held for public use, they are not sufficient here.

Although we sympathize with the City of Mexico's frustration over the rate increases suffered by its citizens, the city's present remedy is before the Public Service Commission (PSC) in a rate proceeding. Dissatisfaction with the PSC is not in and of itself justification for condemnation of a public utility, without, at the very least, a specific and express statute so providing.

The trial court being without jurisdiction to enter an order of condemnation in this

---

**2.** Mexico argues that it has not renewed Missouri Cities' franchise. A franchise, however, is not a prerequisite to public use. Public use is determined by the PSC's issuance of a certificate of convenience and necessity. *City of Blue Springs v. Central Development*, 684 S.W.2d 44, 51 (Mo. App.1984). See also *State ex rel. Union Electric Co. v. Public Service Comm.*, 770 S.W.2d 283 (Mo.App.1989); *State v. Springfield City Water*

matter, our preliminary writ of prohibition is made absolute.[3]

All concur.

*Co.,* 345 Mo. 6, 131 S.W.2d 525, 532 (Mo. banc 1939).

**3.** While this case has been pending, the legislature has passed Senate Bill No. 709, which

would appear to prohibit the type of condemnation considered here. Because of the result reached, we need not address the effect of this bill, if it should be signed into law by the Governor.