

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| METROPOLITAN ST. LOUIS SEWER DISTRICT, | ) | ED101713 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 13SL-CC03760 |
| | ) | |
| CITY OF BELLEFONTAINE NEIGHBORS, et al., | ) | Honorable Mark D. Seigel |
| | ) | |
| Respondents. | ) | Filed: February 24, 2015 |

## Introduction

This case involves a construction error during the City of Bellefontaine Neighbors' (City) street improvement project that resulted in damage to Metropolitan St. Louis Sewer District's (MSD) sewer lines under the street. The issues are whether one political subdivision may sue another political subdivision for inverse condemnation and whether sovereign immunity applies in a tort action between two such entities. MSD appeals the trial court's dismissal of all of its claims against the City. MSD argues that its petition properly stated claims in inverse condemnation, negligence, and trespass against the City for the cost of replacing sewer lines damaged by the City's street project. We would affirm in part and reverse in part, but because of the general interest and

importance of the question presented, we transfer this case to the Missouri Supreme Court pursuant to Rule 83.02.[1]

## Background

According to MSD's petition, in 2009, the City undertook a street improvement and resurfacing project (Project). The City hired P.H. Weis & Associates, Inc., d/b/a Weis Design Group (Weis) as the engineer for the Project, and Sherrell Construction, Inc. (Sherrell) as the general contractor. Lift Rite, Inc. (Lift Rite) performed mudjacking services for the Project. Mudjacking consists of pumping a pressurized, concrete-like slurry into voids beneath streets and other concrete slabs.

During this mudjacking process, slurry flowed into MSD's sewer lines, instead of the voids under the street. The slurry hardened inside MSD's sewer lines, causing those lines to be out of service until MSD repaired or replaced them. The total cost of restoring the damaged sewer lines was $66,860.25.

MSD filed suit against the City, Weis, Sherrell, and Lift Rite to recover this sum. MSD asserted claims of trespass (Count I) and negligence (Count II) against Weis, Sherrell, and Lift Rite. In Count III, MSD raised a claim of inverse condemnation against the City. The City moved to dismiss Count III, arguing MSD lacked standing to bring an inverse condemnation action against the City, because MSD is a political subdivision and the City has no power of eminent domain over property already devoted to public use. The City also argued MSD did not plead an affirmative act by the City that damaged MSD's property. The trial court granted the City's motion to dismiss Count III.

MSD sought leave to file an amended petition, which the trial court granted. MSD's first amended petition expanded the factual pleadings to include several acts by

---

[1] All rule references are to Mo. R. Civ. P. (2014) unless otherwise indicated.

2

the City, including supervising and directing Weis and Sherrell, participating in planning conferences regarding the Project, and coordinating with MSD and other utilities to avoid damage to any utility systems. MSD's first amended petition reasserted Count III for inverse condemnation against the City, and also joined the City as a defendant on Counts I and II for trespass and negligence, respectively.

The City again moved to dismiss MSD's petition, raising the same arguments regarding Count III and asserting sovereign immunity and lack of a tortious act by the City regarding Counts I and II. The trial court granted the City's motion to dismiss, removing the City as a defendant from the suit.[2] This appeal follows.

## Standard of Review

"A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." City of Lake St. Louis v. City of O'Fallon, 324 S.W.3d 756, 759 (Mo. banc 2010) (quoting Reynolds v. Diamond Foods & Poultry, Inc., 79 S.W.3d 907, 909 (Mo. banc 2002)) (internal alteration omitted). In ruling on such a motion, a court views the facts alleged in the petition as true and grants all reasonable inferences in favor of the plaintiff, determining whether the petition sufficiently alleges facts that meet the elements of a recognized cause of action. City of Lake St. Louis, 324 S.W.3d at 759.

We review a trial court's grant of a motion to dismiss *de novo*. Id. We consider only the grounds raised in the motion to dismiss, and we do not consider matters outside the pleadings. Id.

---

[2] The trial court stayed Counts I and II against Weis, Sherrell, and Lift Rite during the pendency of this appeal.

3

MSD contests the trial court's dismissal of its claim of inverse condemnation. The trial court did not specify its grounds for dismissal, but one of the grounds raised in the City's motion to dismiss is dispositive. The issue is whether one political subdivision has standing to bring a claim of inverse condemnation against a municipality, another political subdivision. The City argues that MSD lacks standing to bring such a claim because as a political subdivision, MSD operates sewer lines that are already devoted to public use, and the City has no power to condemn such property. MSD argues that the City's power of eminent domain does extend to public property, and therefore a corresponding action in inverse condemnation is available to MSD for damage caused by the City during the Project.

First, the power of eminent domain "is inherent in the sovereignty of the state[, but] does not inhere naturally in municipalities." City of Smithville v. St. Luke's Northland Hosp. Corp., 972 S.W.2d 416, 420 (Mo. App. W.D. 1998) (citing State ex rel. Mo. Cities Water v. Hodge, 878 S.W.2d 819, 820 (Mo. banc 1994)). A municipality's power of eminent domain must be delegated by the state legislature. Id. Here, the City's power of eminent domain comes from Section 88.667,[3] which allows the City to take "private property . . . for public use," for several enumerated purposes, "and for any other necessary public purposes."

Further, a city also has the power to condemn property already devoted to public use, but only where the city's proposed use does not conflict with the existing public use. See Hodge, 878 S.W.2d at 821 (noting "significant body of Missouri law has addressed the issue of when condemnation of public property may occur for a new and different

---

[3] All statutory references are to RSMo. (2000), unless otherwise indicated.

public use").[4]  On the other hand, if the proposed use "would destroy the previous 'necessary' use, specific legislative delegation is required." Id. at 822; see also City of Smithville, 972 S.W.2d at 418 (finding statutory authority required where city's use would destroy previous use).

Balancing a city's power of eminent domain is the constitutional protection for landowners' property rights that "private property shall not be taken or damaged for public use without just compensation." MO. CONST. art. I, sec. 26.  This provision is self-enforcing, such that a party may bring an action directly under it.  Zumalt v. Boone County, 921 S.W.2d 12, 14 (Mo. App. W.D. 1996).  Where a city does not initiate formal condemnation proceedings, but nevertheless appropriates or damages property through the course of some city project, inverse condemnation is the cause of action through which to raise a violation of article I, section 26.  State ex rel. City of Blue Springs v. Nixon, 250 S.W.3d 365, 371 (Mo. banc 2008); see also Heins Implement Co. v. Mo. Highway & Transp. Comm'n, 859 S.W.2d 681, 693 (Mo. banc 1993), abrogated on other grounds by Southers v. City of Farmington, 263 S.W.3d 603 (Mo. banc 2008). Additionally, because inverse condemnation is based on the constitution, sovereign immunity does not apply.  Clay County Realty Co. v. City of Gladstone, 254 S.W.3d 859, 866 (Mo. banc 2008).

Though it is well established that inverse condemnation is an enforcement of this protection against the taking or damage of *private* property, here we face a situation in which a city project damaged property devoted solely to *public* use, and we must

---

[4] The Missouri Supreme Court in Hodge also addressed the City's argument that recognizing the power to condemn public property would enable an endless circle of successive condemnations, and the court anticipated that the rule requiring the uses must be consistent would help prevent such a situation. State ex rel. Mo. Cities Water Co. v. Hodge, 878 S.W.2d 819, 824 (Mo. banc 1994).

5

determine whether the same protection is available. There is no precedent in Missouri for including public property under the blanket of the state constitutional protection for private property.

MSD argues that we should find its property is included on the basis of the United States Supreme Court's decision in United States v. 50 Acres of Land, 469 U.S. 24 (1984). In that case, the Court concluded that "the same principles of just compensation presumptively apply to both private and public condemnees," under the Fifth Amendment, which prohibits the federal taking of private property without just condemnation. Id. at 31. However, the Court also gave this rationale for its finding:

> *When the United States condemns a local public facility*, the loss to the public entity, to the persons served by it, and to the local taxpayers may be no less acute than the loss in a taking of private property. Therefore, it is reasonable to construe the reference to "private property" in the . . . Fifth Amendment as encompassing the property of state and local governments *when it is condemned by the United States*.

Id. (emphasis added). Thus, the Court analogized the *federal* government's taking of *local* taxpayer-funded property to the taking of a private individual's property.[5]

The Missouri Supreme Court has made the protection of private property rights under the Missouri Constitution paramount, even where a public utility holds a private property right. See St. Charles County v. Laclede Gas Co., 356 S.W.3d 137, 139-40 (Mo.

---

[5] MSD also points us to precedent in other states recognizing a cause of action for inverse condemnation brought by one public entity against another, but those states have different legal schemes forming the bases of their respective actions for inverse condemnation. See Marin Mun. Water Dist. v. City of Mill Valley, 249 Cal. Rptr. 469 (Cal. Ct. App. 1988) (right of city to take public property is authorized by statute and not limited by rule that uses must be consistent; more expansive action for inverse condemnation includes unintentional damage cases "based primarily on principles of tort and property law"); City of Keizer v. Lake Labish Water Control Dist., 60 P.3d 557 (Or. Ct. App. 2002) (finding Oregon constitutional provision parallel to Missouri's article I, section 26 did not provide basis for inverse condemnation action for damage to public property; instead finding inverse condemnation action existed under different state constitutional provision). Regardless, other states' expansions of inverse condemnation are not binding here.

6

banc 2011) (finding utility company held easement for use of public road for gas lines, easement is private property right that county may not take without just compensation, thus county had to reimburse utility company for cost to relocate gas lines due to widening of county road). In view of Laclede Gas, it is likely that our Missouri Supreme Court would logically extend inverse condemnation in Missouri to protect public property from damage by a city project, especially where, had the same project damaged a private landowner's property, an action for compensation under inverse condemnation is readily available with no obstacle of sovereign immunity. However, absent legislative authority or Missouri Supreme Court guidance, we cannot read the word "public" into the plain constitutional language of protection for "private property." As an intermediate court of appeals, that is not our place.

In this light, because MSD's petition does not allege the taking or damage of any private property right, as the law presently stands in Missouri, we agree MSD does not have standing to raise a claim of inverse condemnation and would deny this point. However, because of the importance of this question, we transfer to the Missouri Supreme Court. Rule 83.02.

Point II

MSD argues in this point that the trial court erred in dismissing its claims of trespass and negligence against the City. The trial court did not specify its grounds for dismissing each claim. The City argued the petition contained insufficient allegations of the elements of each claim, and that the petition failed to plead a waiver of sovereign immunity. We disagree.

7

First, sovereign immunity is essentially the longstanding common law rule that "the state is not subject to tort liability without its consent." Bush v. State Highway Comm'n of Mo., 46 S.W.2d 854, 857 (Mo. 1932). Sovereign immunity at common law has also applied to municipalities in a limited way: "the general rule [is] that a city is not liable for torts arising out of the performance of governmental functions, but is liable if the tort arises out of the performance of its proprietary or corporate functions." Dallas v. City of St. Louis, 338 S.W.2d 39, 41 (Mo. 1960).

Missouri codified sovereign immunity in Section 537.600. This section came about after the Missouri Supreme Court abrogated the doctrine of sovereign immunity altogether in Jones v. State Highway Commission, 557 S.W.2d 225 (Mo. banc 1977). The Missouri legislature then enacted Section 537.600, which reinstated sovereign immunity to the extent that it existed prior to the Jones decision, with some modifications listed in the statute. Section 537.600; Bartley v. Special Sch. Dist. of St. Louis County, 649 S.W.2d 864, 866 (Mo. banc 1983). Thus, the distinction in application of sovereign immunity between governmental and proprietary functions of municipalities has remained even after the enactment of Section 537.600.[6] State ex rel. Bd. of Trustees of City of N. Kan. City Mem'l Hosp. v. Russell, 843 S.W.2d 353, 358-59 (Mo. banc 1992).

Additionally, before the enactment of Section 536.600, sovereign immunity was the rule, not the exception; and it remains as such. Bartley, 649 S.W.2d at 868. Missouri courts strictly construe statutory waivers to sovereign immunity. Id.; Koppel v. Metro. St. Louis Sewer Dist., 848 S.W.2d 519, 520 (Mo. App. E.D. 1993).

---

[6] We note Section 537.600.2 makes clear that the two statutory waivers in Section 537.600.1 are applicable even where the public entity acts in a governmental capacity, but neither of these is relevant here.

8

Turning to whether MSD's petition was sufficient regarding a waiver of sovereign immunity, "Missouri courts have routinely held that sovereign immunity is not an affirmative defense and that the plaintiff bears the burden of pleading with specificity facts giving rise to an exception to sovereign immunity when suing a public entity." Richardson v. City of St. Louis, 293 S.W.3d 133, 137 (Mo. App. E.D. 2009). This requires a specific pleading of facts showing that the municipality acted in a proprietary capacity. Burke v. City of St. Louis, 349 S.W.2d 930, 933 (Mo. 1961); see also Richardson, 293 S.W.3d at 138 (finding allegation that city charged fee for services not enough to establish city performed proprietary function under circumstances usually considered governmental).

Here, MSD failed to state in its pleadings that the City's actions here were proprietary in nature and therefore sovereign immunity did not apply. Instead, MSD asserted its status as a public entity as a basis for negating sovereign immunity and then stated "[u]pon information and belief, no other exception to sovereign immunity exists." MSD cites no authority for the proposition that where sovereign immunity would otherwise apply, it does not if the plaintiff is a public entity. While MSD notes the lack of case law in which a court found sovereign immunity barred a public entity's claim, we also find no case holding at common law or under any statute that sovereign immunity is waived where the plaintiff is also a public entity. Rather, case law discussing sovereign immunity focuses on *when* the government may be sued, regardless of who the plaintiff is.[7] Cf. Dallas, 338 S.W.2d at 40 (holding "the rule of municipal immunity for torts

---

[7] We note MSD's argument that courts have recognized that public entities may bring an action against a city where a private party may not. We acknowledge this is true in the context of certain declaratory judgment actions, where private plaintiffs are limited by Rule 98.02. City of Lake St. Louis v. City of O'Fallon, 324 S.W.3d 756 (Mo. banc 2010). However, City of Lake St. Louis did not establish a general

9

arising out of the performance of a governmental function applies in cases where the injured person is a municipal employee, as well as where the injured person is a member of the general public"). Because sovereign immunity is the rule, rather than the exception, MSD must show a recognized exception applies. See Bartley, 649 S.W.2d at 868. Because we find no exception to sovereign immunity based solely on the fact that the plaintiff is a public entity, MSD was mistaken in pleading its public status as the basis for concluding sovereign immunity does not apply here.

However, given the liberal view courts bestow upon the allegations contained in petitions when ruling upon a motion to dismiss, in this instance, we do not consider MSD's mistaken conclusion fatal.[8] MSD did plead specific facts regarding the nature of the Project and detailed the City's involvement. MSD pled that the Project was a "street improvement and resurfacing project." Missouri courts have found that improvement and maintenance of city streets are proprietary functions of municipalities. See Russell, 843 S.W.2d at 359 (noting "laying out, building, and maintaining city streets are proprietary functions"); German v. Kan. City, 512 S.W.2d 135, 144 (Mo. banc 1972) (noting city's "proprietary function of maintaining and improving its streets"). Thus, the City may face liability for torts it commits during street improvement or maintenance. Given this, we would find the specific facts alleged in the petition here, taken as true, sufficiently established that sovereign immunity does not bar MSD's tort claims against the City.

---

rule that public entities may bring suits in all cases where private parties may not, nor do we agree that this case applies in the context of sovereign immunity.

[8] While research has produced no case in which a court found a petition sufficient despite reliance on the wrong basis for waiver of sovereign immunity, there are cases in which the court finds the facts sufficient to show the city was acting in a propriety capacity, despite the petition's failure to show a statutory exception to sovereign immunity. E.g., Counts v. Morrison-Knudsen, Inc., 663 S.W.2d 357, 361-63 (Mo. App. S.D. 1983) (finding though petition was "not a model of careful draftsmanship" and failed to allege facts of any specific exceptions from Section 537.600, facts still showed city acted in propriety capacity).

10

Next, the City argued in its motion to dismiss that notwithstanding sovereign immunity, MSD's petition failed to state claims for trespass and negligence because MSD is unable to show causation under the facts alleged. We disagree.

The petition alleged, among other things, that the City supervised all aspects of the Project, participated in weekly site meetings, approved the use of equipment and procedures, and directed Sherrell on concrete specifications. If MSD was able to prove that some act of the City in any of these ways created a faulty site plan resulting in slurry accidentally being pumped into the wrong destination, MSD could show acts of the City that caused the damage to its sewer lines. See St. Joseph Light & Power Co. v. Kaw Valley Tunneling, Inc., 589 S.W.2d 260, 263 (Mo. banc 1979) (noting power company recovered in negligence action against city for failing to exercise proper control over contractor and failing to prevent foreseeable damage). Our task here is not to comment on the likelihood of MSD proving these claims, but to determine whether the petition, with all reasonable inferences in favor of MSD, adequately alleges causation. We find that it does, and we would reverse the trial court's dismissal of MSD's tort claims.

## Conclusion

Because inverse condemnation arises from the constitutional protection against taking or damage of private property, we find this constitutional claim is not available as a remedy for damage to public property, and we would affirm the trial court's dismissal of MSD's claim for inverse condemnation. We also find that MSD's reliance on its public status as an exception to sovereign immunity was mistaken, but despite this, the petition sufficiently alleged facts establishing that the City acted in a proprietary capacity in carrying out the Project, thus sovereign immunity does not apply to tort claims arising

11

out of the Project. We also find that in granting all reasonable inferences to MSD, the petition alleges causation. Thus, we would reverse the trial court's dismissal of MSD's tort claims against the City. However, due to the general interest and importance of the issues on appeal, we transfer to the Missouri Supreme Court. Rule 83.02.

_____
Gary M. Gaertner, Jr., Judge

Kurt S. Odenwald, P. J., concurs.
Robert G. Dowd, Jr., J., concurs.