_____

No. 95-3412
_____

Union Center Redevelopment            *
Corporation, a Missouri               *
redevelopment corporation,            *
                                      *
          Plaintiff - Appellant,*
                                      * Appeal from the United States
                                      * District Court for the
     v.                               * Eastern District of Missouri.
                                      *
National Railroad Passenger           *
Corporation, a District of            *
Columbia corporation,                 *
                                      *
          Defendant - Appellee.       *

_____

          Submitted:  April 11, 1996

             Filed:  January 2, 1997
_____

Before MCMILLIAN, JOHN R. GIBSON, and FAGG, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.


     Union Center Redevelopment Corporation brought a condemnation action against National Railroad Passenger Corporation, known as Amtrak, to acquire two parcels of real property adjacent to Union Station in downtown St. Louis, Missouri.  Amtrak previously had acquired the property under its federal condemnation power for the construction of a rail passenger service station.   The district court[1] granted summary judgment to Amtrak, concluding that Union

_____

[1]The Honorable George F. Gunn, United States District Judge for the Eastern District of Missouri.

Center had failed to show that there was no possibility that Amtrak would use the property in the future for a public use such as an intercity rail passenger station. Union Center appeals, arguing that the district court misinterpreted Missouri law and that the planned future use of property for public use is not a defense to condemnation for a present public use. We conclude that Union Center cannot maintain a condemnation action against Amtrak because 45 U.S.C. § 545(d) (1994)[2] constitutes an implied preemption of Missouri condemnation law. We also conclude that Union Center cannot prevail under Missouri law, as Union Center failed to establish that its proposed use will not materially interfere with Amtrak's plan to use the property in the future for an intercity rail passenger station. Accordingly, we affirm.

In 1980, under its federal condemnation power, Amtrak acquired three parcels of property near Union Station in St. Louis for the purpose of constructing a rail passenger service station for intercity rail passenger service. At the time Amtrak obtained this property, the federal government had committed funding for the construction of a rail passenger station in St. Louis, but later withdrew the funding. Since acquiring the property, Amtrak has continued unsuccessfully to seek funds to build a station on the property. In the meantime, Amtrak has leased portions of the property to the post office for parking and temporary storage of mail trucks and trailers and to St. Louis Station Associates for parking. The property is also included as one of eight possible sites for a proposed Multi-Modal Transportation Center that, if built, would include a rail passenger station.

---

[2]The Rail Passenger Service Act of 1970 was recodified at 49 U.S.C. § 24101 et seq., and reenacted as part of a general restructuring of the United States Code, which took effect on July 5, 1994. Pub. L. No. 103-272, 108 Stat. 899 (1994). The parties agree that the former Title 45 controls this action because it was commenced before July 5, 1994.

-2-

In 1993, Union Center, a redevelopment corporation organized under Missouri law, Mo. Rev. Stat. §§ 353.010-.190 (1994), filed a condemnation petition in state court seeking to condemn two parcels of the property Amtrak had acquired in the 1980 federal condemnation actions. Union Center has the right of eminent domain under Section 353.130 of the Missouri Revised Statutes.

Amtrak removed the condemnation action to federal court and moved for judgment on the pleadings or, in the alternative, summary judgment. Amtrak argued that Missouri law did not permit condemnation of Amtrak's property, and also that Union Center lacked standing to collaterally attack the 1980 condemnation actions and was barred by the doctrines of res judicata and collateral estoppel. Amtrak also argued that 45 U.S.C. § 545(d) preempts state laws that conflict with Amtrak's federal right of condemnation.

The district court did not decide Amtrak's preemption, collateral estoppel, or res judicata arguments. See Union Ctr. Redev. Corp. v. National R.R. Passenger Corp., 874 F. Supp. 968, 970 (E.D. Mo. 1995). Instead, the court looked to Missouri law and concluded that Union Center could not condemn Amtrak's property because Amtrak's property already was devoted to a public use and Union Center had failed to show that there was "no possibility in the future for Amtrak to use the property for a public use such as an intercity rail passenger station." Id. Union Center appeals.

**I.**

Amtrak contends that we should affirm the district court's judgment on the alternative ground that 45 U.S.C. § 545(d) impliedly preempts any state or local law that permits the condemnation of Amtrak's property without its consent. Section

545(d)[3] grants Amtrak the right to condemn any property that is required for intercity rail passenger service. See National R.R. Passenger Corp. v. Two Parcels of Land, 822 F.2d 1261, 1264-65 (2d Cir.) (discussing Amtrak's condemnation authority), cert. denied, 484 U.S. 954 (1987).

The Supreme Court recently outlined the doctrine of implied preemption:

> [A] federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, or when state law is in actual conflict with federal law. We have found implied conflict pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

---

[3] 45 U.S.C. § 545 provides, in part:

(d) Acquisition of property; declaration of taking; property compensation; procedures; transfer of title

(1) [Amtrak] is authorized, to the extent financial resources are available --

. . .

(B) to acquire any right-of-way, land, or other property (except right-of-way, land, or other property of a railroad or property of a State or political subdivision thereof or of any other governmental agency), which is required [for] inter-city rail passenger service;

by the exercise of the right of eminent domain, in accordance with the provisions of this subsection, in the district court of the United States for the judicial district in which such property is located . . .; Provided, That such right may only be exercised when [Amtrak] cannot acquire such property by contract or is unable to agree with the owner as to the amount of compensation to be paid.

-4-

<u>Freightliner Corp. v. Myrick</u>, 115 S. Ct. 1483, 1487 (1995) (internal citations and quotations omitted).

Amtrak explains that any state or local law that would allow for the condemnation of its property would directly conflict with Amtrak's independent determination under 45 U.S.C. § 545(d) that such property is "required [for] inter-city rail passenger service." <u>See</u> <u>National R.R. Passenger Corp. v. Boston and Maine Corp.</u>, 503 U.S. 407, 417-422 (1992) (considering another condemnation provision in the Rail Passenger Service Act).

Union Center responds that 45 U.S.C. § 545(d) does not impliedly preempt state or local condemnation laws. Union Center supports its argument with the Supreme Court's decision in <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S. 504 (1992), that holds that when a federal statute contains an express preemption clause, and that clause is a reliable indication of congressional intent with respect to state authority, a court cannot consider implied theories of preemption. Because the Rail Passenger Service Act expressly preempts numerous state and local laws and does not mention condemnation laws, Union Center argues there is no implied preemption. <u>See</u> <u>Cipollone</u>, 505 U.S. at 516-17. The Supreme Court recently rejected Union Center's interpretation of <u>Cipollone</u>, however, reasoning that, "[a]t best, <u>Cipollone</u> supports an inference that an express preemption clause forecloses implied preemption; it does not establish a rule." <u>Freightliner Corp.</u>, 115 S. Ct. at 1488.

Under Union Center's construction of state law, Union Center could condemn Amtrak's property thereby frustrating Amtrak's ability to accomplish its federal mandate of creating a nationwide rail system and overriding Amtrak's decision that property is "required [for] inter-city rail passenger service." <u>See</u> 45 U.S.C. § 545(d). <u>See</u> <u>also</u> <u>Two Parcels of Land</u>, 822 F.2d at 1266-67 (holding that Amtrak's condemnation rights would be "actually

-5-

frustrate[d]" if state law were applied to determine the measure of compensation due landowners following condemnation under 45 U.S.C. § 545(d)); <u>National R.R. Passenger Corp. v. Commonwealth of Pa. Pub. Util. Comm'n</u>, 848 F.2d 436, 437-40 (3d Cir.) (holding, under the principles of federal supremacy, that Amtrak was exempt under 45 U.S.C. § 546(b) from payment of a special assessment by a state agency), <u>cert. denied</u>, 488 U.S. 893 (1988).  Accordingly, we are persuaded that 45 U.S.C. § 545(d) impliedly preempts Missouri law.

## II.

Even if Missouri condemnation law applied, we are convinced that Missouri law does not authorize Union Center's proposed condemnation of Amtrak's property.  Union Center contends that, contrary to the interpretation of the district court, Missouri law does not require as a condition precedent to taking property previously acquired and held for public use, that the condemnor negate the possibility that the owner may use the property in the future for a public use.

In granting summary judgment to Amtrak, the district court relied on <u>St. Louis, Hannibal & Kansas City Railway v. Hannibal Union Depot Co.</u>, 28 S.W. 483 (Mo. 1894).  In that case, a railroad sought to condemn, for use as railway track, a part of land acquired and held by Hannibal Union Depot that was currently used for a railroad depot.  <u>Id.</u> at 484.  The railroad condemned the property under Section 2741 of the 1889 Missouri Revised Statutes (now codified at Mo. Rev. Stat. § 523.100 (1994)), which provided:

> In case the lands sought to be appropriated are held by any corporation, the right to appropriate the same by a railroad . . . shall be limited to such use as shall not materially interfere with the uses to which, by law, the corporation holding the same is authorized to put said lands.

-6-

After the trial court allowed the railroad to condemn the property, the depot appealed.  The Missouri Supreme Court first described the power of the state to appropriate private property to a public use as "an inherent element of sovereignty. . . appl[ying] to all property, and . . . impliedly reserved in every grant."  Id. at 485.  The court then explained that the power to determine whether the proposed use constitutes a public use rests exclusively with the legislature.  Id.  The court clarified this power:

> It may be conceded, as a general rule of law, that lands once appropriated to one public use cannot be taken under proceedings in invitum and applied to the same or an inconsistent use, unless the intention of the legislature that it should be so taken is manifested in express terms or by necessary implication.

Id.

The court decided that the general condemnation power given to the railroad necessarily implied the power to appropriate a part of the depot's land unless the condemnation would materially interfere with the uses of the depot.  Id.  The court allowed the railroad to proceed with its condemnation because it found that the construction and operation of the railroad would not materially interfere with the land acquired and used by the depot.  Id. at 485-86.

Union Center argues that the district court's reliance on Hannibal is misplaced because the Missouri court was considering a specific statute that required a determination that the proposed taking did not materially interfere with another public use.  Union Center contends that there are a number of cases decided after Hannibal, most notably, Kansas & Topeka Coal Ry. Co. v. Northwestern Coal & Mining Co., 61 S.W. 684 (Mo. 1901) (en banc), which permit property acquired and held for a proposed future public use to be subsequently condemned for a present public use.

In <u>Northwestern Coal</u>, a railroad attempted to condemn land for railroad tracks.  <u>Id.</u> at 685.  The coal company which owned the land protested the condemnation, arguing that the location of the proposed tracks would materially interfere with its operations and construction of a new mine.  <u>Id.</u> at 692-93.  The court rejected the coal company's arguments stating that it "must deal . . . with the conditions that exist at the time the condemnation is asked, and cannot take into account conditions that may or may not arise or be created thereafter."  <u>Id.</u> at 693.  The court did not, however, hold that future plans for public property are of no consequence.  Indeed, the court specifically considered the coal company's future plans, but concluded that the location and operation of the railroad would not materially interfere with the present or future use of the land for mining purposes, noting that the coal company had offered to sell the railroad a right-of-way for three thousand dollars.  <u>Id.</u>

Recently, the Missouri Supreme Court reaffirmed <u>Hannibal Union Depot Co.</u> stating:

> [P]roperty already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication, mere general authority to exercise the power of eminent domain being in each case insufficient; . . .

<u>Missouri Cities Water Co. v. Hodge</u>, 878 S.W.2d 819, 821 (Mo. 1994) (internal citations omitted).  After analyzing several condemnation cases, the court summarized the law in Missouri when a condemnor attempts to condemn property already devoted to a public use for another public use:

> The consistent thread of law running through these cases is that if any existing public use will not be harmed by a new and different public use, condemnation

will be allowed under a general form of authority, both uses being "necessary" and not necessarily inconsistent or destructive. However, before allowing a municipality or a public service entity to take other public property that would destroy the previous "necessary" use, specific legislative delegation is required. The rationale being that the legislature, not the subsequent condemning authority, is the proper entity to decide between mutually conflicting or destructive uses of public property.

Id. at 822. Accord City of Kirkwood v. Union Elec. Co., 896 S.W.2d 946 (Mo. Ct. App. 1995) (statutory authority permitting condemnor to acquire by eminent domain real estate and personal property for the purpose of constructing, maintaining, and operating electric light plants, did not "specifically and expressly state[] that the eminent domain power may be exercised to acquire an existing `waterworks' or `electrical utility'").

Union Center contends that two sources provide it with specific authority for the condemnation. First, Union Center argues that Section 353.130.3 of the Missouri Revised Statutes specifically authorizes an urban redevelopment corporation to take "[p]roperty already devoted to public use."[4] Section 353.130.3, however, provides only generalized authority for the condemnation of public property, and does not specifically authorize Union Center to condemn the property of Amtrak. Next, Union Center asserts that the ordinances adopted by the City of St. Louis

---

[4]Mo. Rev. Stat § 353.130.3 provides:

An urban redevelopment corporation may exercise the power of eminent domain in the manner provided for corporations in chapter 523, RSMo; or it may exercise the power of eminent domain in the manner provided by any other applicable statutory provision for the exercise of the power of eminent domain. Property already devoted to a public use may be acquired in like manner, provided that no real property belonging to any city, county, or the state, or any political subdivision thereof may be acquired without its consent.

-9-

provide express legislative authority to Union Center for condemning property. Union Center, however, must have such authority from a Missouri statute. See Missouri Cities Water Co., 878 S.W.2d at 821, 825; Maryland Heights Fire Protection Dist. v. Campbell, 736 S.W.2d 383, 386 (Mo. 1987).

Union Center also argues that the court misapplied Missouri law to the circumstances of this case by concluding that Amtrak's long-term plan to build a rail passenger station constituted a public use, and that Amtrak's commercial rental of portions of the property qualified as an interim public use. Union Center points out that there is no approved plan to build a rail passenger station on the property, the plan having been cancelled, and that Amtrak itself characterizes the property as "excess real estate."

There is, however, evidence that Amtrak has a long-term plan to build a station on the property. Edward M. Jenkins, project director for real estate development for Amtrak, testified in his deposition that there are ongoing plans to design a passenger station on the property. Jenkins also clarified that Amtrak referred to the property as "excess real estate" because the property "was not at that time in active railroad use, . . . not that it would never be necessary for railroad use, or that it wasn't intended for railroad use." In addition, the City of St. Louis has proposed a Multi-Modal Transportation Center for the area that would include a rail passenger station for Amtrak, and the city currently is considering the property for the proposed center. In light of this evidence, the district court did not err in concluding that Amtrak's plan to use the property as a rail station constitutes a public use.

Likewise, we are unpersuaded by Union Center's argument that the district court erred in concluding that the current use of the land constitutes an interim public use. Amtrak now leases one of the two parcels of property to the United States Post Office for

parking and storage, and the other to an affiliate of Union Center for parking.  Leasing the property for parking with the long-term intent to develop the property as a rail station constitutes a public use.  <u>See</u> <u>The Curators of Univ. of Missouri v. Brown</u>, 809 S.W.2d 64, 65-67 (Mo. Ct. App.), <u>cert. denied</u>, 502 U.S. 940 (1991); <u>Arata v. Monsanto Chemical Co.</u>, 351 S.W.2d 717, 721 (Mo. 1961).

We affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.