CITY OF SMITHVILLE,
Missouri, Appellant,

v.

ST. LUKE'S NORTHLAND HOSPITAL
CORP. f/k/a, Spelman Memorial
Hospital, Respondent,

Western Resources, Inc., Defendant,

Southern Union Company f/k/a Missouri
Gas Energy, Respondent,

Southwestern Bell Telephone
Company, Respondent,

Dennis Collins, d/b/a Executive Travel
Center, Respondent,

Smithville Pharmacy, Inc., Defendant,

Paul D Stevens, D.D.S. d/b/a Smithville
Dental Care, Respondent,

Northland Regional Ambulance
District, Respondent,

Vha, Inc., Amicus Curiae.

No. WD 53765.

Missouri Court of Appeals,
Western District.

April 21, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 2, 1998.

Application for Transfer Denied
Aug. 25, 1998.

Randal J. Leimer, Rose, Brouillette & Shapiro, Kansas City, for appellant.

Thomas W. Wagstaff, Kansas City, Blackwell Sanders Matheny Weary & Lombardi, Jerome E. Brant, amicus curiae, Liberty, for respondent.

Before LOWENSTEIN, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

The City of Smithville appeals from the trial court's order entering summary judgment in favor of St. Luke's Northland Hospital Corp., Western Resources, Inc., Southern Union Company d/b/a Missouri Gas Energy, Southwestern Bell Telephone Company, Dennis Collins d/b/a Executive Travel Center, Smithville Pharmacy, Inc., Paul D. Stevens, d/b/a Smithville Dental Care and Northland Regional Ambulance District (hereinafter collectively referred to as St. Luke's). On appeal, Smithville contends that the trial court erred in finding that it had no jurisdiction to hear the case and in entering summary judgment in favor of St. Luke's. First, Smithville alleges that the trial court erred in ruling that it needs specific statutory authority to condemn St. Luke's because St. Luke's is not a protected prior public use under Missouri condemnation law. Second, Smithville contends that, assuming St. Luke's is a prior public use, the trial court erred in ruling that Smithville needs specific statutory authority to condemn it because Smithville's contem-

plated use of the hospital would not materially interfere with or totally destroy the prior public use. Finally, Smithville argues that, assuming specific statutory authority is necessary to condemn, it has such authority in § 79.380, RSMo 1994.[1]

Because St. Luke's operation of the hospital constitutes a prior public use and Smithville's proposed operation of the hospital is for the same use and would materially impair or interfere with the former use, Smithville was required to have specific statutory authority to condemn the existing hospital. It did not have such authority. Therefore, the judgment of the trial court granting St. Luke's motion for summary judgment is affirmed.

### I. Factual and Procedural Background

Since 1993, St. Luke's has owned, operated and managed St. Luke's Northland Hospital—Smithville Campus, located at 601 South 169 Highway in Smithville, Missouri. St. Luke's Northland Hospital—Smithville Campus is a state licensed hospital facility. The hospital preceding St. Luke's was founded in 1938 and renamed Spelman Memorial Hospital in 1970 to honor its founder, Dr. Art Spelman. Prior to St. Luke's acquisition of the hospital in 1993, Spelman Memorial Hospital operated as a full service acute care hospital. Among the services provided were a 24–hour emergency room with physician staff, an operating room, inpatient and outpatient surgical services, laboratory services, full radiology services and an intensive care unit. The hospital was rated as a level II trauma center because of its extensive offering of services.

When St. Luke's acquired Spelman Memorial Hospital in 1993, it renamed the hospital St. Luke's Northland Hospital—Smithville Campus and reduced the number of services offered by the hospital. St. Luke's discontinued the 24–hour physician-staffed emergency room, inpatient and outpatient surgical services, the intensive care unit, the operating room and most radiological services. St. Luke's continued to provide a skilled nursing unit, basic emergency services, inpatient re-

habilitation, mental health services and home health care services.

As a result of St. Luke's reduction of the medical and emergency services offered by the hospital, the Smithville City Council passed Ordinance 1687 authorizing the city to enter into negotiations to purchase St. Luke's Hospital. The ordinance authorized the city to exercise the power of eminent domain and condemn St. Luke's property if negotiations to purchase it proved unsuccessful. The ordinance also authorized the city to lease the facility to North Kansas City Hospital if the city acquired the property by purchase or condemnation in order to put the private property to "a vital and necessary public use and purpose." The terms of the lease authorized North Kansas City Hospital to lease the hospital from Smithville and provide full hospital services for Smithville and its residents. The terms of the lease also permitted Smithville to terminate the arrangement with North Kansas City Hospital if it failed to provide full acute care services at the hospital.

After negotiations to purchase St. Luke's failed, Smithville commenced condemnation proceedings. Smithville filed a petition in the circuit court of Clay County to condemn St. Luke's Hospital pursuant to the city ordinance. In this petition, Smithville contended that it had the statutory authority of eminent domain under §§ 79.380 and 88.667 to condemn St. Luke's Hospital and was authorized by Ordinance 1687 to pursue this course of action. Smithville also cited its desire to "have within its municipal boundaries a full service hospital that provides acute care services, including but not limited to, a 24–hour physician staffed emergency room." Smithville indicated that obtaining such a full service hospital was necessary to promote the health, safety and welfare of the city and its inhabitants.

In response, St. Luke's filed a motion to dismiss, or alternatively, for summary judgment against Smithville. St. Luke's alleged that there was no genuine issue of material

---

1. All statutory references are to the Revised Statutes of Missouri, 1994 unless otherwise indicated.

fact and it had a right to judgment as a matter of law in that Smithville had no statutory authority to condemn an existing hospital and that its proposed condemnation was "an extraordinary and unprecedented exercise of the power of eminent domain" unauthorized by Missouri law. St. Luke's also alleged that Ordinance 1687, authorizing the condemnation and subsequent lease to North Kansas City Hospital, was invalid because it was enacted before North Kansas City Hospital had the power to operate outside the city limits of North Kansas City. Due to the alleged invalidity of the lease, St. Luke's argued that the purpose of the condemnation was impossible because Smithville would be unable to operate the hospital without North Kansas City Hospital's participation.

The trial court held an evidentiary hearing and subsequently sustained St. Luke's motion for summary judgment. In its order sustaining the motion, the trial court ruled that it did not have jurisdiction to enter an order of condemnation because Smithville did not have the required statutory authority to condemn the hospital. The trial court reasoned that the operation of the hospital constituted a public use and that Smithville's proposed condemnation of the facility would totally destroy St. Luke's use of the hospital. Therefore, the trial court determined that Smithville had no general authority to condemn the property under § 88.667 and turned to the question of whether specific statutory authority existed for a condemnation action. In determining that such authority did not exist, the trial court examined § 79.380, which authorizes fourth class cities such as Smithville to condemn "lands for hospital purposes." The trial court reasoned that the authority to condemn lands did not constitute specific authority in plain and unequivocal language to condemn an existing and operating hospital.

As a result, the trial court entered an order in favor of St. Luke's and ruled that its judgment was final for purposes of appeal. Smithville filed a timely appeal from this order.

II. *Standard of Review*

Here, St. Luke's filed a motion to dismiss Smithville's action, or in the alternative, for summary judgment. As a general rule, review of the trial court's ruling on a motion to dismiss is limited to the sufficiency of the pleadings on their face. *Xavier v. Bumbarner & Hubbell Anesth.*, 923 S.W.2d 428, 430 (Mo.App.1996). However, "[w]hen the parties introduce evidence beyond the pleadings, a motion to dismiss is converted to a motion for summary judgment." *Id.* See also Rule 55.27(a). Here, the trial court held an evidentiary hearing on St. Luke's motion, hearing arguments and evidence from both sides. Therefore, because the parties introduced evidence beyond the pleadings, and the court held an evidentiary hearing, this court reviews this matter under a summary judgment standard of review. *Xavier*, 923 S.W.2d at 430.

On review of a trial court's order granting summary judgment, this court views the evidence in a light most favorable to the party against whom the judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Summary judgment is appropriate when a movant demonstrates, through pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that there is no genuine issue of material fact and the admitted facts show a legal right to judgment." *Smith v. Taylor–Morley, Inc.*, 929 S.W.2d 918, 921 (Mo.App.1996).

Before turning to Smithville's points on appeal, this court notes that the question before this court is essentially a jurisdictional one. If Smithville has no authority to condemn St. Luke's Hospital, the trial court was without jurisdiction to proceed on Smithville's condemnation action. *State ex rel. Mo. Cities Water v. Hodge*, 878 S.W.2d 819, 820 (Mo. banc 1994). The trial court properly noted that this was the standard when it indicated that because Smithville had no authority to condemn, it was without jurisdiction to hear the case.

III. *Points on Appeal*

A. St. Luke's Hospital Constitutes a Prior Public Use Under Missouri Condemnation Law

In its first point on appeal, Smithville contends that the trial court erred in ruling that it needs specific statutory authority to condemn St. Luke's Hospital. Smithville acknowledges that if St. Luke's is a prior public use specific statutory authority is required to condemn it, but it argues that because St. Luke's does not constitute a prior public use, its general statutory authority to condemn the property under § 88.667 is sufficient.

"The power of eminent domain, or condemnation, has long been recognized in Missouri." *Mo. Cities Water*, 878 S.W.2d at 820. Such power is inherent in the sovereignty of the state. *Id.; State ex rel. City of Gower v. Gee*, 573 S.W.2d 107, 109 (Mo.App. 1978). However, the right of eminent domain and condemnation does not inhere naturally in municipalities, such as Smithville, or public service corporations. *Mo. Cities Water*, 878 S.W.2d at 820. The General Assembly must delegate the right of eminent domain to municipalities in order for them to have the power of condemnation. *Id.* Statutes delegating the right of eminent domain are strictly construed by the courts. *Id.* at 821.

> [T]he exercise of eminent domain is in derogation of the right of the citizen; . . . a statute delegating that power must be strictly construed, and the person or body claiming the right to exercise such delegated power must be able to point to the statute which either expressly or by necessary implication confers that right.

*Id.* (quoting *Southwestern Bell Telephone Co. v. Newingham*, 386 S.W.2d 663, 665 (Mo.App. 1965)) (footnotes omitted).

As a fourth class city, the legislature has granted Smithville general statutory authority to condemn private property under § 88.667. That statute provides that "[p]rivate property may be taken by cities of the fourth class, for public use . . . and for any other necessary public purposes." However, this general authority to condemn is not always sufficient. "[P]roperty already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use." *City of Blue Springs v. Central Development*, 684 S.W.2d 44, 50 (Mo.App.1984).

This is the rule unless the legislature has manifested a contrary intent "in express terms or by necessary implication. . . ." *Mo. Cities Water*, 878 S.W.2d at 821 (quoting 29 C.J.S. Eminent Domain § 74 at 861–62).

In other words, where a municipality desires to condemn property devoted to a prior public use for another public use which will totally destroy or materially impair or interfere with the former use, specific statutory authority is required. A municipality's general authority, such as § 88.667, is not sufficient under these circumstances. Therefore, this court turns to the question of whether St. Luke's constitutes a prior public use and, if so, whether Smithville's proposed use of that property will totally destroy or materially impair St. Luke's use.

The issue of whether St. Luke's is devoted to a public use is a judicial question for this court to decide. *Bowman v. Kansas City*, 361 Mo. 14, 233 S.W.2d 26, 30 (1950); *State ex rel. Missouri Highway & Transp. Com'n v. Perigo*, 886 S.W.2d 149, 152 (Mo. App.1994). Whether a particular use is a public use is a public policy inquiry and is highly dependent on the specific facts and circumstances of each particular case. *J.C. Nichols Co. v. City of Kansas City*, 639 S.W.2d 886, 890 (Mo.App.1982). The definition of public use is flexible in nature and there has been a historical tendency to expand the types of activities which the courts consider to be public uses. *In re Kansas City Ordinance No. 39946*, 298 Mo. 569, 252 S.W. 404, 408 (1923). An examination of Missouri case law on this topic reveals a liberal attitude toward what constitutes a public use in condemnation actions. *See In the Matter of Proceedings to Grade, etc. v. Reinwald*, 270 S.W.2d 863, 867 (Mo.1954); *Phillips Pipe Line Co. v. Brandstetter*, 241 Mo.App. 1138, 263 S.W.2d 880, 886 (1954).

Although the definition of public use is flexible and imprecise, there are some basic principles governing this court's determination of whether a public use exists in this case. Under Missouri condemnation law, public use means public benefit. *Brandstetter*, 263 S.W.2d at 886. It should also be noted that "[i]n order to constitute

public use, it is not necessary that the whole community or any large part of it should actually use or be benefited" by the proposed use. *Arata v. Monsanto Chemical Company*, 351 S.W.2d 717, 721 (Mo.1961) (quoting *In re Kansas City Ordinance No. 39946*, 252 S.W. at 408). Furthermore, private entities' operations can be considered public uses if their operation constitutes a benefit to the public. *Brandstetter*, 263 S.W.2d at 886.

Under these principles, this court determines that St. Luke's use of the hospital constitutes a public use. In authorizing the use of state funds to benefit a hospital, the Missouri Supreme Court noted that "[a]ll have recognized that hospital care provided by the public, private, and private sectarian non-profit institutions is a public use clothed with the overriding public interest. . . ." *Menorah Medical Center v. Health and Educational Facilities Authority*, 584 S.W.2d 73, 79 (Mo. banc 1979). Clearly, the members of the public residing in Smithville and its surrounding environs benefit from having a hospital in the community to attend to their medical needs and emergencies. In fact, the whole community benefits from the hospital's operation whether they actually use the facilities or not. This is true whether the hospital offers full service or partial service to the residents. Either way, the community of Smithville benefits from the operation of the hospital. Because St. Luke's Hospital benefits the public, the trial court did not err in finding that the hospital's operation constitutes a prior public use.

Smithville argues that a public benefit alone is not sufficient. It contends that there must also be a legal obligation to continue the services in order to constitute a prior public use, citing *City of Blue Springs*, 684 S.W.2d at 50, for the proposition that "a mere voluntary assumption of public service which may be abandoned at any time carries with no such privilege of exemption from condemnation." Although Smithville correctly cites *City of Blue Springs* for this principle, virtually all of the Missouri cases discussing whether a use is a public use focus on whether the public benefits from the use of the facility not on whether the entity has a legal obligation to provide the services from

which the public derives its benefit. *See Arata*, 351 S.W.2d at 721; *Board of Regents v. Palmer*, 356 Mo. 946, 204 S.W.2d 291, 294 (1947); *Kansas City v. St. Louis & S.F.R. Co.*, 230 Mo. 369, 130 S.W. 273, 275 (1910); *Brandstetter*, 263 S.W.2d at 886. Most significantly, the Missouri Supreme Court in *Mo. Cities Water*, 878 S.W.2d at 823, suggested that "[a]nother justification set forth for the public taking of private property already devoted to public use is the temporal reality that the property may be withdrawn from public use by its owners." The Supreme Court limited its discussion of a requirement of a legal obligation to this issue and did not include such a requirement in any discussion concerning the existence of a public use.

Furthermore, this court notes that the decision in *City of Blue Springs* did not turn on whether there was a legal obligation to provide the services but on whether the property at issue was being used as a public use at the time of the proposed condemnation. 684 S.W.2d at 51–52. In *City of Blue Springs*, the court determined that there was not an *existing* public use of the waterworks which the city wished to condemn because it was merely in the planning stages and was not operational at the time. *Id.* Any discussion of a requirement that there be a legal obligation to continue the services to qualify as a prior public use is dictum and not binding on this court because it is outside the scope of the real inquiry of the case. *See Union Elec. v. Platte–Clay Elec.*, 814 S.W.2d 643, 648–49 (Mo.App.1991).

Here, St. Luke's was clearly operating as a hospital at the time Smithville's city council passed the ordinance authorizing its purchase or condemnation. As a result, *City of Blue Springs* is not factually similar to the case at hand. Therefore, because the public benefited from St. Luke's operation of the hospital, St. Luke's is a prior public use under the liberal standards of Missouri's condemnation law. Point I is denied.

Although the trial court correctly ruled that St. Luke's constituted a prior public use, Smithville is still entitled to use its general condemnation authority if its proposed use of the hospital will not totally destroy or mate-

_effort

rially impair or interfere with the former use. *See State ex rel. State Highway Com'n v. Hoester,* 362 S.W.2d 519, 522 (Mo. banc 1962). Therefore, we turn to Smithville's next point on appeal.

**B. Smithville's Condemnation Will Totally Destroy or Materially Impair or Interfere with St. Luke's Use of the Hospital**

As its second point on appeal, Smithville argues that even if St. Luke's operation of the hospital constitutes a prior public use, the trial court erred by ruling that Smithville needs specific statutory authority to condemn it because Smithville's contemplated use of the hospital would not materially interfere with or totally destroy the former use. Essentially, Smithville argues that since it is expanding the services offered by the hospital, its use will not materially interfere with or destroy St. Luke's use.

■ Smithville correctly argues that its general statutory authority to condemn is sufficient if its proposed use of the hospital will not materially interfere with or totally destroy St. Luke's use of the facility. *See State ex rel. Md. Heights, Etc. v. Campbell,* 736 S.W.2d 383, 385 (Mo. banc 1987). However,

> [P]roperty already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication, mere general authority to exercise the power of eminent domain being in such case insufficient....

*Id.* (quoting *Kansas City v. Ashley,* 406 S.W.2d 584, 589 (Mo.1966)). If Smithville's proposed condemnation will totally destroy or materially impair or interfere with St. Luke's use of the facility, specific statutory authority is required. *City of Kirkwood v. Union Elec. Co.,* 896 S.W.2d 946, 947 (Mo. App.1995). This requirement exists "to assure that there is a recognized need for the condemnation of property already devoted to the public use...." *Mo. Cities Water,* 878 S.W.2d at 823–24.

This court has already determined that the operation of St. Luke's constitutes a prior public use. Therefore, we must examine whether St. Luke's operation of the hospital will be totally destroyed or materially impaired by Smithville's condemnation of the facility. St. Luke's is currently operating as a less than full-service hospital. Smithville proposes to condemn this property in order to lease it to North Kansas City for use as a full-service hospital. Thus, Smithville proposes to displace St. Luke's as the operator of hospital and put North Kansas City Hospital in its place.

■ One of the most significant factors in determining whether an existing use will be materially interfered with or destroyed by the proposed condemnation of a facility is whether the two uses are capable of coexistence and are consistent with one another. *Campbell,* 736 S.W.2d at 386. *See also Mo. Cities Water,* 878 S.W.2d at 822; *Ashley,* 406 S.W.2d at 590. In *Mo. Cities Water,* the court distinguished partial takings of property through condemnation from the total taking of a facility in order to remove the current owner and install a new owner. 878 S.W.2d at 822. In the case of a partial taking, both uses could coexist after the condemnation because the prior operator was still able to make use of its property. *See Campbell,* 736 S.W.2d at 386; *St. Louis, H. & K.C. Ry. Co. v. Hannibal Union Depot Co.,* 125 Mo. 82, 28 S.W. 483, 485 (1894). But in the case of a total taking, there can be no coexistence and specific statutory authority is required because the condemnation will materially interfere with or totally destroy the prior use. *See Mo. Cities Water,* 878 S.W.2d at 822.

■ Here, Smithville proposes to condemn the hospital in order to remove St. Luke's as the operator of the hospital and put North Kansas City Hospital in its place through the terms of the lease between Smithville and North Kansas City Hospital. As such, it is clear that St. Luke's operation of the hospital and Smithville's proposed use after condemnation are not capable of coexistence in any fashion. St. Luke's and North Kansas City Hospital cannot operate the hospital at the same time. Indeed, the entire

423

object of Smithville's condemnation is to remove St. Luke's as the operator of the hospital so that more desirable services can be offered by an agreement with one of its competitors. The fact that Smithville's proposed use and the current use of the hospital are not capable of coexistence indicates that St. Luke's current use of the hospital will be totally destroyed or, at the least, materially impaired, by Smithville's condemnation of the facility. *See Ashley,* 406 S.W.2d at 590.

█ Smithville argues that it proposes to condemn the hospital in order to broaden the services the hospital provides, and as such, it is not attempting to totally destroy St. Luke's use of the hospital. However, Smithville's argument overlooks the fact that in determining whether a proposed use will totally destroy or materially impair or interfere with the existing use, this court considers the question from the perspective of the current owner. *Id.; Mo. Cities Water,* 878 S.W.2d at 822; *Campbell,* 736 S.W.2d at 386. In *Ashley,* the City of Kansas City sought to condemn property being utilized by a railroad for railroad tracks in order to remove the railroad tracks and construct streets for vehicular traffic. 406 S.W.2d at 585. The Supreme Court determined that the city needed specific statutory authority, which it did not have, in order to proceed with the condemnation because the railroad would not be able to use the property for its purposes if the city condemned the property for street purposes. *Id.* at 590. "Certainly the effect of the stated taking would be inconsistent with and in conflict with continued use of the land by the railroad; the taking would materially impair, injure, and interfere with such use...." *Id.*

Here, too, St. Luke's operation of the hospital is inconsistent with Smithville's proposed condemnation because Smithville plans to replace St. Luke's as operator of the hospital through the terms of the lease agreement with North Kansas City Hospital. This taking would materially interfere with and totally destroy St. Luke's use of the hospital facility. *Id.* Rather than creating a choice between two necessary public uses, Smithville's condemnation will replace one operator of a public use with another. *See Mo. Cities Water,* 878 S.W.2d at 822. When viewed

from St. Luke's perspective, the condemnation represents a total destruction of St. Luke's ability to use the hospital facility. Clearly, if Smithville's condemnation of the hospital proceeded, St. Luke's use of the hospital would be totally destroyed.

Where property is already devoted to one public use, such as St. Luke's, it cannot be taken for another public use which will totally destroy or materially impair or interfere with the existing use absent express legislative authority. *Campbell,* 736 S.W.2d at 385. Since St. Luke's use of the hospital constitutes a prior public use and Smithville's proposed condemnation will totally destroy or materially impair or interfere with St. Luke's use of the hospital, Smithville's general statutory authority to condemn is insufficient and specific statutory authority is required. *Ashley,* 406 S.W.2d at 590. Point II is denied.

C. Smithville Does Not Possess Specific Statutory Authority to Condemn St. Luke's Hospital

As its final point on appeal, Smithville argues that even if it needs specific statutory authority to condemn the hospital, the trial court erred in ruling that it lacks such authority. Smithville argues that it possesses specific statutory authority to condemn an existing hospital pursuant to § 79.380. Section 79.380 authorizes fourth class cities such as Smithville to "purchase or condemn and hold for the city ... all necessary lands for hospital purposes ..., and erect, establish and regulate hospitals ... and provide for the government and support of the same, and make regulations to secure the general health of the city...." Smithville acknowledges that the statute does not contain specific language authorizing it to condemn an existing hospital, but argues that implicit in the term "regulate" is the authority to do so. Smithville's contention is based on its argument that in order to regulate something, there must be a present object in existence to regulate. Therefore, Smithville argues that "given [its] ability to control and govern existing hospitals under this statute, it would naturally follow that it also has the ability to condemn an existing hospital as an extension of such regulation."

Although Smithville offers an interesting interpretation of the statute, its interpretation is not a strict construction of that statute. An argument similar to Smithville's has been rejected in Missouri before. In *City of Kirkwood*, 896 S.W.2d at 946, Kirkwood sought to condemn Union Electric's electric distribution facility. Kirkwood argued that it had specific authority to condemn an existing electric light plant for an identical use under § 91.600. *Id.* at 947. That statute authorizes a city "to construct, maintain and operate a waterworks and to acquire real estate and personal property for that purpose by purchases, donation or eminent domain." *Id.* Kirkwood's argument was based on the fact that it had implied authority to condemn an existing waterworks because of its express authority to maintain such a facility under this statute. *Id.*

In rejecting this argument, the *Kirkwood* court declined to extrapolate an implied authority to condemn from the language of the statute concerning Kirkwood's authority to maintain a waterworks. It held that, under *Mo. Cities Water*, specific and express statutory authorization is required before a municipality can condemn an existing facility which is devoted to a public use. *Id.* The *Kirkwood* court relied on *Mo. Cities Water 's* statement that "[a] municipality's condemnation of an entire public utility ... for the same use, is an extraordinary exercise of the power of eminent domain." *Id.* (quoting *Mo. Cities Water*, 878 S.W.2d at 825). Therefore, because there was no express statutory authority for the condemnation, the *Kirkwood* court entered judgment against the City of Kirkwood. Id. at 947–48.

This court finds *Kirkwood 's* interpretation of specific authority persuasive in this case. Here, as in *Kirkwood*, Smithville argues that it has implied authority to condemn an existing hospital for the same use as a result of its authority to regulate hospitals under § 79.380. Smithville's proposed interpretation of the statute is strained and involves a liberal construction rather than an appropriate strict construction of the statutory language. This court finds that a proper construction of the statute reveals no specific and express statutory authority for Smith-

ville's proposed condemnation of an existing hospital. Nothing in the language of § 79.380 specifically or expressly authorizes Smithville to condemn an existing hospital in order to operate it for the same use. Point III is denied.

### IV. Conclusion

Therefore, because St. Luke's use of the hospital constitutes a prior public use and Smithville's condemnation of that facility would totally destroy or materially impair or interfere with St. Luke's use, specific and express statutory authority to condemn the hospital is necessary. Smithville lacks specific and express statutory authority to condemn the hospital, so the trial court did not err in granting St. Luke's motion to dismiss, or in the alternative for summary judgment. The judgment of the trial court is affirmed.

All concur.