**ALLRIGHT PROPERTIES,
INC., Appellant,**

v.

**TAX INCREMENT FINANCING
COMMISSION OF KANSAS
CITY, Respondent.**

No. WD 68406.

Missouri Court of Appeals,
Western District.

Dec. 18, 2007.

Steven Mauer, Kansas City, for Appellant.

Michelle Webb Burns, Overland Park, KS, for Respondent.

PAUL M. SPINDEN, Judge.

Allright Properties, Inc., appeals the circuit court's judgment of condemnation. It challenges the authority of Kansas City's Tax Increment Financing Commission (TIFC) to acquire its land in downtown Kansas City. It contends that the circuit court erred by not requiring TIFC to prove its compliance with Section 523.274(1), RSMo Supp.2006. We affirm the circuit court's judgment.

The property in dispute is two parcels at 1040 Cherry Street and 500 East 11th Street. During April 2006, TIFC created a redevelopment plan for an area that included this property. TIFC's redevelopment plan concluded that the area was blighted, and, during May 2007, the City Council of Kansas City approved TIFC's plan. Pursuant to the plan, TIFC filed a petition for condemnation in the circuit court after unsuccessfully attempting to purchase Allright's property. On July 2, 2007, the circuit court entered a judgment condemning Allright's property.

In its only point on appeal, Allright asserts that the circuit court erred in entering its judgment because it did not require TIFC to prove, as mandated by Section 523.274(1), that the city council as the condemning authority individually considered its two parcels or determine that a preponderance of the individual parcels were blighted. We disagree with the point.

The Missouri Real Property Tax Increment Allocation Redevelopment Act, Section 99.800 to 99.865, RSMo Supp.2006, permits a municipality to develop what is commonly referred to as a tax increment financing project, or TIF project, for the purpose of redeveloping an area. Section 99.820.2 authorizes a municipality to appoint a TIF commission to create a redevelopment plan for an area, and Section 99.810.1(2) requires that an area be included in a TIF project only if it is blighted, a conservation area, or an economic development area. Under Section 99.820.1(3), after the TIF commission drafts the plan and the municipality approves it, the municipality may use its power of eminent domain to acquire the property that is

"reasonably necessary to achieve the objectives of the redevelopment plan."

Pursuant to the Missouri Real Property Tax Increment Allocation Redevelopment Act, TIFC declared that the redevelopment area that included Allright's property was blighted. But, before TIFC could condemn the property, it had to satisfy Section 523.274, which governs eminent domain. This statute says:

> Where eminent domain authority is based upon a determination that a defined area is blighted, the condemning authority shall individually consider each parcel of property in the defined area with regard to whether the property meets the relevant statutory definition of blight. If the condemning authority finds a preponderance of the defined redevelopment area is blighted, it may proceed with condemnation of any parcels in such area.

■ When interpreting a statute, the judiciary's task is to ascertain the General Assembly's intent by reading the statute's language according to its plain and ordinary meaning. *Cline v. Teasdale,* 142 S.W.3d 215, 222 (Mo.App.2004). Although this case involves statutes from separate chapters of the Revised Statutes, we are to consider statutes relating to the same subject matter *in pari material,* meaning that we must " 'interpret and apply statutory provisions with reference to each other to determine legislative intent.' " *Preston v. State,* 33 S.W.3d 574, 579 (Mo.App.2000) (citation omitted).

■ The plain and ordinary meaning of Section 523.274's language sets up a two-prong test that a condemning authority must pass before it can proceed with condemnation. Under the statute's first sentence, the condemning authority must "individually consider each parcel of property in the defined area with regard to whether the property meets the relevant statutory definition of blight." Our understanding of this sentence is that the General Assembly is requiring the condemning authority to examine carefully each parcel apart from the others to determine whether or not it satisfies the statutory definition of blight.

■ Allright argues that the General Assembly intended for the requirement in Section 523.274's first sentence to mandate that the condemning authority make a specific finding as to whether or not each individual parcel is blighted. Under this interpretation, a blight study would be flawed if it did not contain a list of the parcels and specific findings as to whether or not each parcel was blighted. Although the statute requires a condemning authority to evaluate each parcel, we see nothing in the statute that requires the authority to make a specific finding for each parcel. The General Assembly mandated that the condemning authority "consider" each parcel in making a finding that the entire area was predominantly blighted-not that an individual parcel was blighted. If the General Assembly wanted the condemning authority to make express findings for each parcel, surely it would have used the term "finding" or its equivalent in the first sentence. Although the condemning authority is not required to make an express finding for each parcel, it still must consider each parcel and evidence must establish that it do so.

The statute does not make evident the purpose for this requirement. What is the condemning authority to do with the information it gleans from this individualized consideration? Allright speculated that the General Assembly mandated the consideration to ascertain a parcel's fair market value. Perhaps this is so, but, whatever the purpose, the General Assembly mandated in Section 523.274 that the con-

demning authority consider each parcel to determine whether or not it satisfies the requirements of Section 99.805(1) that it "retards the provision of housing accommodations or constitutes an economic or social liability or a menace to the public health, safety, morals, or welfare in its present condition and use[.]"

The second sentence of Section 523.274 declares that, "[i]f the condemning authority finds a preponderance of the defined redevelopment area is blighted, it may proceed with condemnation of any parcels in such area." Allright argues that this sentence means that the condemning authority can proceed with condemnation only if it finds that a preponderance of the individual parcels is blighted. TIFC, on the other hand, contends that the sentence means that the condemning authority can proceed only if it finds that a preponderance of the overall area is blighted.

Either interpretation is reasonable because the statute does not explain how a condemning authority is to measure "preponderance." Is it to count the number of individual parcels that are blighted or is it to use the overall square footage? Either approach seems to fit reasonably within the statute's purposes.

■ When a statute is open to differing, but reasonable, interpretations, it is ambiguous. *Hudson v. Director of Revenue*, 216 S.W.3d 216, 221 (Mo.App.2007). When construing an ambiguous statute, we must consider the statute's history, surrounding circumstances, and the statute's objectives. *Angoff v. M and M Management Corporation*, 897 S.W.2d 649, 653 (Mo.App.1995). In light of Section 523.274's history, we agree with TIFC that the General Assembly wanted the condemning authority to determine whether or not the defined redevelopment area was blighted by considering its total square footage and not whether a preponderance of the individual

parcels were blighted. We determine this by comparing the introduced version of Section 523.274 with the final, adopted version.

Apparently, the General Assembly enacted Section 523.274 as part of reform of eminent domain in reaction to the United States Supreme Court's decision in *Kelo v. City of New London*, 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005). DALE A. WHITMAN, *Eminent Domain Reform in Missouri: A Legislative Memoir*, 71 Mo. L.REV. 721, 723 (Summer 2006). In *Kelo*, the Supreme Court upheld the taking of a group of houses by the city government of New London, Connecticut, for use in a redevelopment project. *Kelo*, 545 U.S. at 483–84, 125 S.Ct. 2655. The project's aim was to spur economic growth. It was not intended to remove blight. *Id.* at 483, 125 S.Ct. 2655. Indeed, the city conceded that the condemned properties were not blighted. *Id.* at 475, 125 S.Ct. 2655. In a 5–4 decision, the Supreme Court held that a city's condemning property to facilitate economic development was a sufficiently public use to satisfy the requirements of the Fifth Amendment to the United States Constitution because "economic development is a traditional and long accepted function of government." *Id.* at 484, 125 S.Ct. 2655. As one commentator noted, *Kelo* moved eminent domain cases "a step beyond" prior eminent domain cases. WHITMAN, 71 Mo. L.REV. at 725.

From the proximity of the General Assembly's enactment of Section 523.274 to the Supreme Court's issuance of *Kelo*, we discern that one of the General Assembly's main goals in enacting Section 523.274 was to protect non-blighted parcels from a government's taking by eminent domain. The early versions of the statute support this conclusion. For example, the introduced version of H.B.1944 said:

The condemning authority, after making a finding that each parcel of property in the area to be condemned meets the relevant statutory definition of blighted, shall file a condemnation petition regarding land deemed to be blighted within five years after the redevelopment plan is authorized. If no such petition is filed within the five-year period, or if any parcel of property in the area is determined not to meet the relevant statutory definition of blighted, the authority to acquire the property shall expire. Future acquisition of the property after the expiration of the five years shall require the reauthorization of such project by the condemning authority.

Introduced H.B.1944 (93rd General Assembly, 2nd Regulation Session, 2006), http://www.house.mo.gov/bills061/biltxt/intro/HB1944I.htm (last visited on Dec. 10, 2007). As stated in this bill, the early version of Section 523.274 conceived a two-part test to prevent a condemning authority from condemning any property that included non-blighted parcels. The condemning authority was required to make a finding of whether or not "each parcel of property" was blighted. As conceived in this measure, the condemning authority could not condemn the property if any parcel in a redevelopment area did not "meet the relevant statutory definition of blighted[.]" The main focus of this bill was to make sure that every parcel was blighted.

For reasons not explained or apparent, the General Assembly moved away from this focus. In the final version of Section 523.274, the General Assembly still required the condemning authority to evaluate each individual parcel, but eliminated the requirement that the condemning authority find that "each parcel" was blighted. Importantly, in the second sentence of the final version of Section 523.274 it abandoned any mention of the consequences of a parcel's not being blighted and focused, instead, on whether or not a preponderance of the "defined redevelopment area" is blighted.

▮▮▮▮ This history causes us to conclude that a condemning authority is to determine that an area is predominantly blighted by measuring total square footage of blight in a redevelopment area and comparing it to the square footage of land that is not blighted. We, therefore, construe Section 523.274 as requiring a condemning authority to examine each individual parcel of a redevelopment area to determine whether or not it is an area, that "retards the provision of housing accommodations or constitutes an economic or social liability or a menace to the public health, safety, morals, or welfare in its present condition and use[.]" Section 99.805(1). We interpret the statute as authorizing the condemning authority to take the land so long as a preponderance of the area, as a whole, is blighted. Although we are not certain why the General Assembly wanted the condemning authority to consider each parcel individually, the statute's evolution causes us to believe that determining blight according to total square footage is the only reasonable construction of the statute. Having interpreted the statute, we now turn to the issue of whether or not the circuit court misapplied it.

▮▮▮▮ In Section 523.261, RSMo Supp. 2006, the legislature mandates:

Solely with regard to condemnation actions pursuant to the authority granted by section 21, article VI, Constitution of Missouri and laws enacted pursuant thereto, any legislative determination that an area is blighted, substandard, or unsanitary shall not be arbitrary or capricious or induced by fraud, collusion,

or bad faith and shall be supported by substantial evidence.

The circuit court heard substantial evidence to establish that the condemning authority satisfied both parts.

Michelle Wilson, a member of the Economic Development Corporation that closes TIF projects, testified that the condemning authority had numerous studies in front of it, including a Civil Mall Plan created in 1994 and a current Blight Study. She testified that these exhibits allowed the condemning authority to examine the parcels individually. The Civil Mall Plan included numerous maps of the area and showed each parcel of property in the area. The maps labeled whether or not each parcel of property included a building or a parking lot. For each building, the maps identified the condition of the building and labeled it as excellent, good, fair, or poor. The maps also identified each vacant building and vacant lot. TIFC incorporated this plan into its blight study. The blight study also included numerous photographs of the area. From this, the circuit had a reasonable basis for concluding that the condemning authority examined each parcel individually to determine whether or not it was blighted.

As far as the second part, the blight study concluded that the area was blighted as a whole because the area's buildings were nearing the end of their "life expectancy" and were in "poor physical condition and functionally obsolete." The study concluded that the area was unsafe because of inadequate lighting, accumulation of debris, a lack of fire prevention equipment and safe parking surfaces, and high crime rates.

Allright does not dispute these findings and does not make any argument that the record does not support them. Rather, it claims that TIFC did not present evidence that a preponderance of the individual parcels, or 18 out of 35 parcels, were blighted. Because we have already concluded that the statute does not require such a finding, we deem the argument to be irrelevant. The circuit court did not err in finding that the condemning authority satisfied both elements of Section 523.274.

■ Finally, although Allright did not include the argument in its brief, it averred during oral arguments that the circuit court erred in entering judgment against it because the condemning authority, in making its blight determination, relied on blight studies that were older than five years. Although Allright is correct that the condemning authority relied on older blight studies, we find nothing in Section 523.274 that prevented it from doing so. Section 523.274.2 says:

No action to acquire property by eminent domain within a redevelopment area shall be commenced later than five years from the date of the legislative determination, by ordinance, or otherwise, that the property is blighted, substandard, contains unsanitary conditions, or is eligible for classification within a conservation area as defined in section 99.805, RSMo. However, such determination may be renewed for successive five-year periods by the legislative body.

While Section 523.274.2 mandates that the redevelopment must start within five years of an area's being determined to be blighted, the statute does not prevent the condemning authority from relying on blight studies that are older than five years.

For these reasons, we affirm the circuit court's judgment.

VICTOR C. HOWARD, Chief Judge, and THOMAS H. NEWTON, Judge, concur.