

*In the*

*Missouri Court of Appeals*

*Western District*

| | |
|---|---|
| **CITY OF NORTH KANSAS CITY, MISSOURI,** | **WD76068 and WD76110** |
| **Appellant-Respondent,** | **OPINION FILED:** |
| **v.** | **January 14, 2014** |
| **K.C. BEATON HOLDING COMPANY, LLC, ET AL.,** | |
| **Respondents-Appellants,** | |
| **and** | |
| **PLATTE VALLEY BANK OF MISSOURI AND KEITH HICKLIN,** | |
| **Respondents.** | |

**Appeal from the Circuit Court of Clay County, Missouri
The Honorable Anthony Rex Gabbert, Judge**

Before Division Four: James Edward Welsh, C.J., Cynthia L. Martin, J., and Patrick Robb, Sp. J.

The City of North Kansas City (the City) seeks to condemn property owned by K.C. Beaton Holding Company, L.L.C., upon which Gilbertson Restaurants, L.L.C., operates a Burger King restaurant.[1] The City filed an amended verified petition in condemnation against K.C.

---

[1]We refer to K.C. Beaton Holding Company, LLC, and Gilbertson Restaurants, LLC, collectively as K.C. Beaton.

Beaton, and K.C. Beaton filed a motion to dismiss the petition. The circuit court granted K.C. Beaton's motion to dismiss finding that the City did not have the authority to condemn the Burger King property under section 88.497, RSMo 2000, for the "public purpose" of eliminating blight. The City appeals asserting that the circuit court erred in dismissing its amended verified petition in condemnation on the grounds that the City lacked legal authority to condemn the Burger King property under section 88.497. The City contends that section 88.497 granted the City the right to take property "for any other necessary public purposes" and that the elimination of blight is a public purpose. K.C. Beaton cross-appeals asserting that the circuit court erred in finding that the City's ordinance, which declared the Burger King property to be blighted, was valid. K.C. Beaton asserts that the City's ordinance violates article VI, section 21 of the Missouri Constitution, because the City did not follow the requirements of any statute when it made its determination that the area, which included the Burger King property, was blighted. We affirm the circuit court's judgment and dismiss K.C. Beaton's cross-appeal.

The City of North Kansas City is a third-class and non-charter city with a population between 4,000 and 5,000 inhabitants. K.C. Beaton Holding Company, L.L.C., is the owner of real property located generally at 1911 Armour Road in North Kansas City. Gilbertson Restaurants, L.L.C., is the operator of a Burger King on the property owned by K.C. Beaton Holding Company, L.L.C.[2]

The City has undertaken the removal of blight and seeks to redevelop approximately 57 acres of land located in the City south of Armour Road and east of Interstate 35 (the Armour

---

[2]There were also three other named defendants in the amended verified petition in condemnation: Keith Hicklin (trustee under a Deed of Trust), Platte Valley Bank (mortgagee of and holder of certain other secured interests in the Burger King property), and Lydia McEvoy (duly elected and qualified Clay County Collector of Revenue). None of these defendants participated in the appeal before this court.

2

Road Site).  In an effort to determine whether the Armour Road Site was blighted, the City commissioned a blight study, dated July 31, 2008.  The City obtained an updated blight study, dated April 30, 2010, to confirm and update the contents of the original study.  Both the 2008 and 2010 blight studies concluded that the Armour Road Site was blighted.  The blighting factors were not found on the Burger King property, but because the studies found a preponderance of blight, the studies concluded that the entire area was blighted.[3]

After reviewing the blight studies and being advised of the condition of the Armour Road Site, the City's city council passed Ordinance No. 8476, which was subsequently approved by the City's mayor on June 22, 2010.  In Ordinance No. 8476, the city council found and declared that a preponderance of the Armour Road Site was blighted.  Ordinance No. 8476 specifically stated that the city council reviewed the 2008 and 2010 blight studies for the Armour Road Site prior to determining the property was blighted.  Further, Ordinance No. 8476 stated that the city council made its determination that the property was blighted after considering each parcel within the Armour Road Site.  The ordinance authorized the City to acquire by purchase, donation, lease, or eminent domain, pursuant to section 88.497, RSMo, and Chapter 1.20 of the City Code, all legal interests in the properties within the Armour Road Site.

---

[3]Section 523.274.1, RSMo Cum. Supp. 2012, provides:

> Where eminent domain authority is based upon a determination that a defined area is blighted, the condemning authority shall individually consider each parcel of property in the defined area with regard to whether the property meets the relevant statutory definition of blight.  If the condemning authority finds a preponderance of the defined redevelopment area is blighted, it may proceed with condemnation of any parcels in such area.

This statute requires the condemning authority to evaluate each parcel of property in the defined area to determine whether it is blighted but does not require the condemning authority to make a specific finding as to whether each individual parcel is blighted.  *Allright Props., Inc. v. Tax Increment Fin. Comm'n of Kansas City,* 240 S.W.3d 777, 779 (Mo. App. 2007).  But, even if the individual parcel of land does not meet the statutory definition of blight, the statute authorizes the condemning authority to take the land "so long as a preponderance of the area, as a whole, is blighted." *Id.* at 781.

To carry out its intent to eliminate blight and redevelop the Armour Road Site, the City commenced acquiring various properties within the described area. The City acquired all of the properties at the Armour Road Site except the property that is the subject of this litigation.[4]

On June 28, 2011, the city council and the mayor approved Ordinance No. 8551, which specified that the City deemed it necessary and in the best interests of the citizens of the City to acquire certain interest in lands and all associated appurtenances and improvements, if any, in the Burger King property. Ordinance No. 8551 identified that the land was required for the necessary public purpose of providing for the clearance, replanning, reconstruction, redevelopment and rehabilitation of blighted and substandard areas for any necessary public purpose or any positive economic impact for the public good of the City. Through Ordinance No. 8551, the city council authorized and issued a certificate of public convenience and necessity authorizing the City to acquire by the exercise of eminent domain the Burger King property in fee simple or other appropriate estate.

On July 7, 2011, the City sent a letter to K.C. Beaton Holding Company, which gave notice of the City's intent to acquire the Burger King property as part of the City's plan for redevelopment of the Armour Road Site and which invited K.C. Beaton Holding Company to engage in negotiations prior to initiating a condemnation action. Prior to engaging in negotiations for the property, the City had the Burger King property appraised. The appraiser concluded that the fair market value of the property was $850,000 as of May 15, 2011. On October 4, 2011, the City made a written offer of $850,000 to acquire the Burger King property from K.C. Beaton Holding Company. K.C. Beaton Holding Company did not accept the offer

---

[4]The City states that there remains a question of the ownership of two abandoned rail spurs on the Armour Road site but that the City owns the fee simple absolute title to all property abutting the abandoned spurs. No issue regarding the abandoned rail spurs is before this Court.

4

and made no counteroffer. Although the City in good faith endeavored to agree upon proper compensation for the property, the City was unable to acquire from K.C. Beaton Holding Company fee simple absolute title to the property. Therefore, the City filed its verified petition in condemnation against K.C. Beaton Holding Company on March 23, 2012, and filed an amended petition against K.C. Beaton Holding Company and Gilbertson Restaurants on May 25, 2012, seeking to acquire by the City's power of eminent domain the Burger King property. K.C. Beaton Holding Company and Gilbertson filed their respective answers to the amended petition in condemnation and also filed a joint motion to dismiss.

The circuit court held an evidentiary hearing on the City's condemnation action. During the evidentiary hearing, the City called witnesses to testify and offered various documents and reports into evidence. K.C. Beaton did not call any witnesses to testify and offered no evidence, other than the City's master plan, during the hearing. At the hearing, the City acknowledged that it did not have an actual physical plan for what the redevelopment would look like on the Armor Road site and that it did not have a developer for the area. In the City's Master Plan, the area was not referenced as a redevelopment area but as a "planning area."

On October 1, 2012, the circuit court entered its order and judgment in the case, sustaining K.C. Beaton's motion to dismiss. The City filed a motion for new trial or, in the alternative, a motion to amend or modify the judgment. K.C. Beaton filed a memorandum in opposition to the City's motion for new trial. The circuit court heard argument on the motions, and the circuit court entered an amended order and judgment[5] on January 23, 2013, granting

---

[5]In its judgment, the circuit court also incorporated by reference a memorandum that it issued simultaneously with the judgment and stated that "it shall be considered part of the court's judgment in this case." The memorandum also addressed issues raised by the City's motion for new trial or, in the alternative, motion to amend or modify the judgment.

K.C. Beaton's motion to dismiss and dismissing the City's amended verified petition in condemnation. The circuit court ruled that, although the City complied with the requirements for blighting the property, the City did not have the authority to condemn the Burger King property under section 88.497 for the "public purpose" of eliminating blight. The City appeals, and K.C. Beaton cross-appeals.

In its sole point on appeal, the City contends that the circuit court erred in dismissing its amended verified petition in condemnation on the grounds that the City lacked legal authority to condemn the Burger King property under section 88.497. The City contends that section 88.497 granted the City the right to take property "for any other necessary public purposes" and that the elimination of blight is a public purpose.

"As a general rule, review of the trial court's ruling on a motion to dismiss is limited to the sufficiency of the pleadings on their face." *City of Smithville v. St. Luke's Northland Hosp. Corp.*, 972 S.W.2d 416, 419 (Mo. App. 1998). In this case, however, evidence beyond the pleadings was introduced prior to the dismissal.[6] Under such circumstances, the motion to dismiss would be converted into a motion for summary judgment, and our standard of review would be de novo. *Id.*; Rule 55.27(b); *ITT Commercial Fin. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). However, because this case involves the issue of statutory construction, which is a question of law, our standard of review is most certainly de novo. *Nichols v. Dir. of Revenue*, 116 S.W.3d 583, 585 (Mo. App. 2003).

---

[6]Ordinarily, the court is required to give notice to parties and an opportunity to present all materials pertinent to a motion for summary judgment. *Mitchell v. McEvoy*, 237 S.W.3d 257, 259 (Mo. App. 2007). When, however, "both parties introduce evidence beyond the scope of the pleadings, the motion to dismiss is converted to a motion for summary judgment and the parties are charged with knowledge that the motion was so converted." *Id.* Further, if it is apparent that the parties and the court were informed of the issues, and there is no genuine factual dispute with respect to the evidence submitted to support the motion, then we need not remand for failure to give notice. *Chaney v. Cooper*, 954 S.W.2d 510, 515 (Mo. App. 1997).

In Missouri, "the right of eminent domain rests with the state and does not naturally inhere in counties, municipalities or public service corporations." *State ex rel. Mo. Cities Water Co. v. Hodge*, 878 S.W.2d 819, 820 (Mo. banc 1994). "The right to condemn," therefore, "can be exercised only upon delegation from the state." *Id.* "'[A] statute delegating [the power of eminent domain] must be strictly construed, and the person or body claiming the right to exercise such delegated power must be able to point to the statute which either expressly or by necessary implication confers that right.'" *Id.* at 821 (citation omitted).

In this case, the City's power to take property through eminent domain for the removal of blight originates from Article VI, section 21 of the Missouri Constitution. This provision, which first appeared in the 1945 Constitution, provides:

> Laws may be enacted, and any city or county operating under a constitutional charter may enact ordinances, providing for the clearance, replanning, reconstruction, redevelopment and rehabilitation of blighted, substandard or insanitary areas, and for recreational and other facilities incidental or appurtenant thereto, and for taking or permitting the taking, by eminent domain, of property for such purposes, and when so taken the fee simple title to the property shall vest in the owner, who may sell or otherwise dispose of the property subject to such restrictions as may be deemed in the public interest.

Thus, under this constitutional provision, for non-charter cities like the city of North Kansas City, the Missouri Legislature may "enact laws" that "allow non-charter cities to utilize eminent domain to eliminate blighted areas." *City of Arnold v. Tourkakis*, 249 S.W.3d 202, 205 (Mo. banc 2008).

The City asserts that section 88.497 confers upon it the authority to take the Burger King property in this case. Section 88.497 provides:

> Private property may be taken by the cities of the third class for public use for the purpose of establishing, opening, widening, extending or altering any street, avenue, alley, wharf, creek, river, watercourse, market place, public park or

7

public square, and for establishing market houses, and *for any other necessary public purposes*.

Case law establishes that the elimination of blight is a public purpose. *See e.g. State ex rel. U.S. Steel v. Koehr*, 811 S.W.2d 385, 389 (Mo. banc 1991); *Tierney v. Planned Indus. Expansion Auth. of Kansas City*, 742 S.W.2d 146, 150 (Mo. banc 1987); *State ex rel. Devanssay v. McGuire*, 622 S.W.2d 323, 326 (Mo. App. 1981). The City, therefore, argues that, because the elimination of blight is a public purpose, the phrase "for any other necessary public purposes" in section 88.497 gives third class cities the authority to take private property to eliminate blight. We disagree.

Section 88.497[7] was enacted before the constitutional provision, Mo. Const. art. VI, § 21, even gave the legislature the authority to enact laws to allow non-charter cities to utilize eminent domain to eliminate blighted areas. It, therefore, cannot be said that the legislature intended to include the elimination of blight as a "necessary public purpose" when it enacted section 88.497. "The power to condemn private property for a public purpose is in derogation of the common law and, hence, both the statute conferring the power and the proceedings under the statute are to be strictly construed in favor of the property owner." *City of Caruthersville v. Faris*, 146 S.W.2d 80, 86 (Mo. App. 1940). The right of eminent domain must be expressly given or necessarily implied in the statute, and we will not imply or infer such right from "'vague or doubtful language.'" *State ex rel. Schwab v. Riley*, 417 S.W.2d 1, 3 (Mo. banc 1967).

Consistent with Article VI, section 21 of the Missouri Constitution, the legislature has enacted many comprehensive statutes which provide third class cities the tools to implement plans for the redevelopment of blighted areas. *See, e.g.*, The Planned Industrial Expansion Law,

---

[7]Prior versions of law and revisions appeared in § 6998, RSMo 1939; § 6852, RSMo 1929; § 8334, RSMo 1919; § 9261, RSMo 1909; and L.1909, p.298.

§§ 100.300, RSMo *et seq.*; Land Clearance for Redevelopment Authority Law, §§ 99.300, RSMo *et seq.*; The Urban Redevelopment Corporations Law, §§ 353.010, RSMo *et seq.*; and Real Property Tax Increment Allocation Redevelopment Act, §§ 99.800, RSMo *et seq*.  These statutes "translate into working machinery the rights, power and privileges authorized in Article VI, § 21, of the Constitution of 1945."  *Land Clearance for Redevelopment Auth. of City of St. Louis v. City of St. Louis*, 270 S.W.2d 58, 61 (Mo. banc 1954).  Unlike these Law and Acts, however, the legislature did not (and, perhaps, could not given that the enactment of section 88.497 preceded the enactment of the constitutional provision) specifically provide in section 88.497 the authority for third class cities to implement plans for the redevelopment of blighted areas.

Given the specific constitutional directive in Article VI, section 21 of the Missouri Constitution, for a non-charter city like North Kansas City to utilize eminent domain to eliminate blighted areas, the Missouri Legislature must "enact laws" giving the non-charter city such authority.  We find nothing within section 88.497 which expressly gives third class cities the power of eminent domain to eliminate blight, nor do we find anything within section 88.497 which necessarily implies that third class cities have such power.  A third class city's general authority to condemn under section 88.497 "for any other necessary public purposes" is not sufficient to condemn for blight without a manifested intent by the legislature stating in express terms or by necessary implication that third class cities have such authority.  *See City of Smithville,* 972 S.W.2d at 420 (No authority for a municipality to condemn property devoted to a prior public use for another public use under a statute that gives fourth class cities the general authority to take private property "for public use . . . and for any other necessary public purposes").  We cannot "'read into a statute what the lawmakers in their wisdom have seen fit to

9

leave out.'" *State ex rel. State Hwy. Comm'n v. Pinkley*, 474 S.W.2d 46, 51 (Mo. App. 1971) (citation omitted).

Our conclusion that the legislature did not intend to include the elimination of blight as a "necessary public purpose" is further supported by examining the context in which section 88.497 exists. Indeed, we are "'to interpret and apply statutory provisions with reference to each other to determine legislative intent.'" *Allright Props., Inc. v. Tax Increment Fin. Comm'n of Kansas City*, 240 S.W.3d 777, 779 (Mo. App. 2007) (citation omitted). Section 88.497 exists within a chapter titled "Public Works and Special Assessments Therefore--Condemnation." Chapter 88, RSMo, establishes rules and procedures for cities to build and maintain "traditional" public improvements (such as roads and parks), to levy assessments to pay for them, and to use eminent domain to acquire property for these projects. The removal of blight or acquisition of property for redevelopment is never mentioned in Chapter 88. Thus, taken in the context of Chapter 88, we cannot say that it was the legislative intent of section 88.497 to include the removal of blight in the catch-all phrase, "for any other necessary public purposes."

Because we are to strictly construe eminent domain statutes, *Schwab*, 417 S.W.2d at 3, we decline to accept the City's contention that removal of blight is necessarily implied by the words "for any other public purposes" found in section 88.497. The City does not have the authority to condemn the Burger King property under section 88.497 for the purpose of eliminating blight. We, therefore, affirm the circuit court's judgment dismissing the City's amended verified petition in condemnation against K.C. Beaton.

K.C. Beaton also filed a cross-appeal in this case. In its cross-appeal, K.C. Beaton asserts that the circuit court erred in finding that the City's ordinance, which declared the Burger King property to be blighted, was valid. K.C. Beaton asserts that the City's ordinance violates article

10

VI, section 21 of the Missouri Constitution, because the City did not follow the requirements of any statute when it made its determination that the area, which included the Burger King property, was blighted. Because, however, K.C. Beaton received the relief that it requested from the circuit court--that is, the dismissal of the City's amended verified petition in condemnation-- we fail to see how K.C. Beaton is aggrieved by the circuit court's judgment.

The right to appeal is established by section 512.020, RSMo Cum. Supp. 2012, and provides in part:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any
>
>  . . . .
>
> (5) Final judgment in the case[.]

Thus, under section 512.020, "[a] party must be 'aggrieved' by the judgment below to have any right to appeal." *Schroff v. Smart*, 120 S.W.3d 751, 754 (Mo. App. 2003). "The right of appeal is statutory and it is fundamental that in order to appeal a party must be aggrieved by the judgment from which he appeals. A party cannot be aggrieved when the court has granted all of the relief sought." *Manchester Enters., Inc. v. Sharma*, 805 S.W.2d 186, 186-87 (Mo. App. 1991). The relief sought by K.C. Beaton was the dismissal of the City's amended verified petition in condemnation,[8] and the circuit court granted such relief. K.C. Beaton, therefore, is not aggrieved

---

[8] K.C. Beaton did not seek any other relief, such as declaratory judgment or injunctive relief, seeking to invalidate the City's ordinance. The Missouri Supreme Court has held that, although a party cannot appeal from a judgment wholly in his favor or from a judgment that gives the party all that he asks for, the party "can appeal from a judgment which gives him only a part of the relief he seeks." *Page v. Hamilton*, 329 S.W.2d 758, 762 (Mo. 1959). In this case, K.C. Beaton was granted the relief it asked for, i.e. the dismissal of the City's amended petition in condemnation.

11

by the circuit court's judgment and is not entitled to cross-appeal.  Thus, we dismiss K.C.

Beaton's cross-appeal.

We affirm the circuit court's judgment dismissing the City's amended verified petition in

condemnation against K.C. Beaton.


/s/ JAMES EDWARD WELSH
James Edward Welsh, Chief Judge

All concur.

12